CATHARINE M. BRACE *et al.*

*v.*

JOHN W. BLACK *et al.*

*Filed at Springfield May 9, 1888.*

1. CONTEST OF A WILL—*testamentary capacity.* A witness called by the contestants of a will, stated, on his direct examination, that he could make a statement that would throw light on the question whether the testator was laboring under the delusion that he had no property, and that he and his wife would eventually go to the poor-house, and show that he did not have that delusion, but contestants asked no further question. On cross-examination he was asked to make that statement, and the witness stated that the testator said his daughter demanded him to make her a deed to a part of his property, which he was unwilling to do, and also that he referred to an incumbrance, etc. Contestants then offered to prove by the daughter that she had never demanded her father to make a deed, which the court refused to allow: *Held,* no error. Even if the testator was either willfully or ignorantly mistaken as to the fact, still his declaration showed that he knew he had the property, and hence was laboring under no delusion in that respect.

2. On the contest of a will, the court instructed the jury, for the proponents, that no one, however nearly related, had a natural right that could

3—125 ILL.

be asserted against the will of the testator, and the fact a person was the son-in-law of the testator did not entitle him to be regarded as a natural object of his bounty, and although they might believe, from the evidence, that the testator was prejudiced against the son-in-law, yet, unless they believed, from the evidence, that the latter had so conducted himself as to be entitled to the gratitude of the testator, and to be regarded as a natural object of his bounty, such prejudice, though morbid, and amounting to an insane delusion, would not of itself invalidate his will, provided such insane delusion did not prevent the testator from understanding and appreciating his relation to those who had a claim upon his bounty and who were the natural objects of his bounty: *Held*, not open to the objection of being misleading, as introducing a question not in the case, viz., whether the son-in-law had a claim on the testator's bounty, and because the prejudice against the son-in-law might prevent the testator from making the provision he otherwise would for his daughter. If the insane delusion did not prevent him from "understanding and appreciating" his relation to his daughter, then he knew she was not responsible for anything her husband might have done or said.

3. WITNESS—*competency of party contesting a will.* In a suit by the heirs-at-law of a testator, contesting the will, where the purpose of the suit is, not merely to adjust rights between the heirs-at-law, but to take the estate from the legatees, some of whom are not heirs-at law, and vest it in those who are, the heirs-at-law are not competent witnesses to show the want of testamentary capacity in the testator prior to and at the time of the making of the will.

4. APPEAL—*whether a freehold is involved.* Where the validity of a will is contested which makes a different disposition of real estate from that by the Statute of Descents, a freehold is involved, and the case may be brought directly to this court from the trial court, by appeal or writ of error.

WRIT OF ERROR to the Circuit Court of Greene county; the Hon. GEORGE W. HERDMAN, Judge, presiding.

Mr. JOHN G. HENDERSON, for the plaintiffs in error:

The burden of proof is on the party affirming the validity of the will. 13 Ill. 15; 41 id. 80; 62 id. 196; 89 id. 42.

The oath of the subscribing witnesses, on being introduced, made a *prima facie* case, and the burden of proving unsoundness of mind then rested on complainants. *Carpenter* v. *Calvert,* 83 Ill. 71; *Holloway* v. *Galloway,* 51 id. 159.

Insanity having been shown by the inquest found, the presumption of sanity is reversed. It will be presumed to con-

tinue. *Lilly* v. *Waggoner*, 27 Ill. 397; *Trish* v. *Newell*, 62 id. 200; *Morton* v. *Appleton*, 29 Me. 298; 1 Greenleaf on Evidence, secs. 42, 370.

As to insane delusion, and its incapacitating one from making a will, see 1 Wharton & Stille on Med. Jur. sec. 35; *Lucas* v. *Parsons*, 24 Ga. 640.

Complainants were competent witnesses. *Pigg* v. *Carroll*, 89 Ill. 207; *Mueller* v. *Rebhan*, 94 id. 149; *Kershaw* v. *Kershaw*, 102 id. 307; *Ebert* v. *Gerding*, 116 id. 221; *Treleaven* v. *Dixon*, 119 id. 553.

Mr. E. A. DOOLITTLE, for the defendants in error:

When the evidence as to the mental capacity of the testator is conflicting, the judgment will not be reversed on the ground that the evidence does not support the verdict. *Johnson* v. *Moulton*, 1 Scam. 532; *Roney* v. *Monaghan*, 3 Gilm. 85; *O'Reily* v. *Fitzgerald*, 40 Ill. 310; *Railway Co.* v. *Vosburgh*, 45 id. 311; *DeClerq* v. *Mungin*, 46 id. 112; *Young* v. *Rock*, 48 id. 42; *Railroad Co.* v. *Terhune*, 50 id. 151; *Railroad Co.* v. *Gillis*, 68 id. 317; *Calvert* v. *Carpenter*, 96 id. 63.

There were three witnesses to the will, each of whom, by becoming a witness, virtually certified that the testator was of sound and disposing mind and memory. Each of them went before the probate court and signed and swore to an affidavit to the same effect, in so many words. This affidavit was introduced in evidence, and made out a *prima facie* case. *Carpenter* v. *Calvert*, 83 Ill. 71; *Holloway* v. *Galloway*, 51 id. 159.

The will offered in evidence bears within itself ample proof that the testator possessed the necessary qualifications that he understood the business in which he was engaged at the time; that he remembered the persons who were the natural objects of his bounty; that he knew and understood the nature and extent of his property, and the manner in which he desired to dispose of it. Jarman on Wills, (5th Am. ed.) 103, *et seq;* 1 Redfield on Wills, 123-135.

The standard of measurement for a testator's mental capacity is the ability of the testator to transact his ordinary business. *Trish* v. *Newell,* 62 Ill. 196; *Meeker* v. *Meeker,* 75 id. 260; *Yoe* v. *McCord,* 74 id. 34; *Rutherford* v. *Morris,* 77 id. 418; *Carpenter* v. *Calvert,* 83 id. 62; *Kimball* v. *Cuddy,* 117 id. 232; *Freeman* v. *Easly,* id. 317.

The property owner, unless an idiot or lunatic, must be allowed to make his own division and disposition of his property. Nor does the fact that a party is physically unable to look after his property, or that his mind is enfeebled by age or disease, if not to the point of lunacy or absolute imbecility, take from him this power. *Kimball* v. *Cuddy,* 117 Ill. 232.

If there were any doubt as to the meaning of the statute, the testimony of Mrs. Cullimore and Mrs. Brace was clearly incompetent, under the following decisions: *Holloway* v. *Galloway,* 51 Ill. 160; *Fischer* v. *Fischer,* 54 id. 231; *Mahoney* v. *Mahoney,* 65 id. 406; *Alexander* v. *Hoffman,* 70 id. 114; *Whitmer* v. *Rucker,* 71 id. 410; *Connelly* v. *Dunn,* 73 id. 218; *Bragg* v. *Geddes,* 93 id. 39; *Walsh* v. *Wright,* 101 id. 182; *Wachter* v. *Blowney,* 104 id. 610; *Freeman* v. *Easly,* 117 id. 317.

Per CURIAM: This was a proceeding, by bill in equity, to contest the validity of an instrument purporting to be the last will and testament of William Black, deceased.

Two issues at law were made up and submitted to a jury: First, was the writing purporting to be the last will and testament of William Black, deceased, the last will and testament of the said William Black, or not; second, was the said William Black, at the time of the execution and attestation of the said writing purporting to be the last will and testament of said William Black, of sound mind and memory. The verdict of the jury was: "We, the jury, find the writing offered in evidence to be the last will and testament of William Black, and that he was, at the time of executing it, of sound mind and memory." The court below, after overruling a motion for a new trial, entered a decree upon this verdict.

The will devised real estate *in fee,* and a *freehold* is therefore involved, and the writ of error is properly sued out of this court.

William Black left surviving him children, to whom his property would have descended, as his heirs-at-law, had he made no will, but by the terms of his will he devised a considerable portion of his property to grandchildren, and to one of his children he devised nothing.

Upon the trial, the complainants in the bill, Alice E. Cullimore and Catharine M. Brace, daughters of William Black, were offered as witnesses on their own behalf, to prove the insanity of their father at and prior to the time he executed the instrument in suit purporting to be his last will and testament; but the court, upon the objection of the guardian *ad litem* for the minor grandchildren, who are legatees, refused to allow them to testify, and a material question to be now considered is, whether this ruling is right. It is clear enough, that at common law these parties would be excluded by reason of their interest, and it would seem to hardly admit of a rational doubt that they are not rendered competent by the statute. The adverse parties defend as legatees, and that to which they were called to testify occurred before the death of the testator. The object of the suit is not merely to adjust rights between heirs-at-law, as in *Pigg et al.* v. *Carroll et al.* 89 Ill. 205,—it is to take the estate from the legatees, some of whom are not heirs-at-law, and vest it in the heirs-at-law. There was, therefore, no error in refusing to allow these parties to testify.

Dr. Turner, who was called and examined as a witness on behalf of complainants, stated, on his direct examination, that he could make a statement that would throw light on the question whether the testator was laboring under the delusion that he had no property, and that he and his wife would eventually go to the poor-house, and show that he did not have that delusion. Complainants' counsel asked the witness no further question in this respect, but the counsel for the defendants, on cross-examination, asked the witness to make that statement,

and the witness then said: "He (meaning the testator) said that Mrs. Cullimore demanded him to make her a deed to a part of the property, which he was unwilling to do at that time. Another reason was, that he referred to the incumbrance," etc. Complainants then offered to prove, by Mrs. Cullimore, that she had never demanded him to make a deed, and the court, on objection, refused to allow her to so testify, and this is claimed also to have been error. We think the court ruled properly. Suppose, as the offered testimony would have tended to prove, that he was either willfully or ignorantly mistaken as to the fact that she had demanded a deed, still his declaration showed that he knew he had the property that he did have, and hence that he was laboring under no delusion in that respect, and this was the sole purpose of offering the testimony.

The court, at the instance of the defendants, among other things, instructed the jury:

"The court instructs the jury, for the defendants, that the natural objects of a testator's bounty are those persons who, by reason of kinship or ties of gratitude, may reasonably be supposed to have some claim upon him, but that no one, however nearly related he may be, has any natural right that can be asserted against the will of the testator. So in this case, the mere fact, if it be a fact, that James Cullimore was the son-in-law of William Black, did not, of itself, entitle him to be regarded as a natural object of the bounty of William Black; and although the jury may believe, from the evidence, that William Black was prejudiced against James Cullimore, yet, unless they further believe, from the evidence, that James Cullimore had so conducted himself as to be entitled to the gratitude of his father-in-law, and to be regarded as a natural object of his bounty, such prejudice, although morbid, and amounting to an insane delusion, would not, in itself, invalidate his will: *Provided,* such insane delusion did not prevent the testator, William Black, from understanding and appreci-

ating his relation to those who had a claim upon his bounty, and who were the natural objects of his bounty."

It is contended that this instruction was calculated to mislead, because, first, a question not in the case, namely, whether Cullimore had a claim on the testator's bounty; second, the testator might understand and appreciate his relation to his daughter,—that she was his child, and had just claim upon his bounty,—and yet the insane prejudice of the testator against the husband enter into the making of the will, and prevent him from making that provision for her that he otherwise would. But this fails to give due effect to the words "understand" and "appreciate." If the insane delusion did not prevent the testator from understanding and appreciating his relation to his daughter, then it must have been, first, that he knew that she was not responsible, and ought not to be held responsible, for anything that her husband did or said; and second, that he was able to estimate justly (for in this connection that is the sense of "appreciate") his relation toward her. Having full knowledge and full capacity to reason, there is left no place for delusion to operate. Moreover, the court, in the sixteenth instruction given at the instance of the complainants, told the jury as follows: "That if the jury should believe, from the evidence, that William Black was capable of transacting ordinary business, where there was no intricacy about it, or complication, yet if the jury further believe, from the evidence, that he was laboring under partial insanity from the time that he was adjudged insane down to the time of his death, and that he entertained an insane prejudice against James Cullimore, which entered into and influenced him in the disposition of his property, so far as Alice Cullimore was concerned, then the jury should find that the paper read in evidence is not the will of William Black, and that he was not of sound mind and disposing memory at the time of the execution of said paper." With this instruction, so fully supplementing the other, it is not presumable that the jury were misled.

We think it needful only to add, upon the subject of instructions, that twenty-one instructions, some of them quite lengthy, were given on behalf of the complainants, presenting, fully and fairly, as we think, every contention of the complainants, both of law and of fact. There was, therefore, no error in refusing other instructions asked by complainants.

We have carefully considered all of the evidence in this record, which is quite voluminous, and, having done so, we are unable to say that there was error in not setting aside the verdict of the jury as unsupported by the evidence. To discuss the facts at length would require many pages, and could subserve no useful end. We concede the question of the testator's sanity is a close one, but we can not say that there is a clear and decided preponderance in the evidence that he did not possess what the law contemplates as a sufficiently sound mind to dispose of his property, when he made his will.

The decree is affirmed.

*Decree affirmed.*