MARCHMAN *v.* SEWELL *et al.*

Where a person not a party to an account procures a suit to be instituted and judgment rendered thereon through attorneys employed by him and who in fact represent him and not the plaintiff, and after the rendition of judgment the plaintiff disavows any interest therein or any connection with the suit and disclaims all right to the proceeds thereof, and is himself neither making nor authorizing any effort to enforce the judgment, but the person who caused it to be rendered and his attorneys are seeking to enforce it in the name of the plaintiff, and have caused the defendant's property to be levied upon or his debtors to be garnished for that purpose, the judgment, while it would be an estoppel in favor of the plaintiff therein were he claiming the right to enforce it, is no estoppel in favor of this other person and his attorneys, they being no parties thereto and having no equitable interest therein and not being in privity with the plaintiff. And the facts of the case appearing in the record showing that it would be grossly inequitable for this person and his attorneys to enforce the judgment for their benefit, they ought to be enjoined from so doing, in a suit for the purpose, in which they and the plaintiff in the judgment, together with the levying officers, are made joint defendants.

April 2, 1894. Argued at the last term.

Petition for injunction. Before Judge HARRIS. Carroll county. January 10, 1894.

Marchman alleged: On June 21, 1892, Brannon & Co. obtained judgment against him for $46.96 principal, with interest and cost, in a justice's court of Carroll county. From this judgment execution issued against him and his security on appeal, and has been levied on his property. The judgment is on an open account purporting to be in favor' of Brannon & Co. against him, the consideration of which was fertilizers said to have been furnished him by Brannon & Co. in 1885, for $54. The account was sued in the justice's court in February, 1888, in favor of Brannon & Co. and as their property. He pleaded that he owed them nothing, but only J. D. Sewell, whom he had fully paid for fertilizers by reason of having been garnished at the instance of Halls, Ordway & Mitchell, creditors of Sewell, who obtained judgment against Sewell and petitioner, who admitted he owed Sewell for the guano; which judgment he fully paid off to Halls, O. & M., through their attorney Oscar Reese. The case of Brannon & Co. against him, when first tried, resulted favorably to him. There was an appeal to a jury, who also rendered a verdict for him. The case was then taken by *certiorari* to the superior court, which remanded it for a new trial before a jury. Upon the second jury trial there was a verdict against him, which verdict was set aside by the superior court and a new trial had. Upon the third trial there was a verdict against him, the result of which is the *fi. fa.* and judgment first mentioned. During none of these trials was any plea made by him that the title to the account was not in Brannon & Co.; he suspected that such was the case, but not enough so to cause him to file a plea to that effect and get up proof thereon. Upon every trial of the case where oral testimony was had, Green B. Sewell swore positively that the account was not the

property of J. D. Sewell but of Brannon & Co.; that he had been employed as their agent through one Myers to collect the account, and as such agent had brought the suit and employed Cobb & Beall, attorneys at law, for that purpose; "that he had never had any communication with them during the progress of the suit, and that J. D. Sewell had assigned and he was his assignee." J. D. Sewell also swore that the account was the property of Brannon & Co., that he had so told petitioner as soon as he was garnished by Halls, O. & M., and so told Green B. Sewell and G. W. Merrell; that he was insolvent and had assigned to Green B. Sewell; that he had sold guano on commission for Brannon & Co. in 1885, and all the guano notes and accounts he had got from them were Brannon & Company's property. After hearing all this, petitioner thought perhaps Brannon & Co. had authorized the suit brought or had some interest therein. After the execution was levied, knowing how unjust it was for him to pay the account twice, and knowing it belonged to J. D. Sewell if anybody, he determined, as he had now nothing to lose in prosecuting his inquiries to the bottom, to ascertain if Brannon & Company had anything to do with the matter or any title to or any interest in the account, and ascertained the following facts which he never fully ascertained until April 7, 1893: Brannon & Company did a fertilizer business in Atlanta in 1885, the firm consisting of Brannon alone, who sold to Sewell that year twenty tons of fertilizer, for which the firm took Sewell's obligation and for which Sewell was alone responsible. Said firm never had any interest in or title to the account, and had no knowledge of suit, judgment, *fi. fa.* or levy until March 15, 1893, when they repudiated the suit, judgment and *fi. fa.* Green B. Sewell was never the firm's agent in any capacity, nor has it ratified his conduct. Green B. Sewell through his attorneys, acting fraudu-

lently under the name of Brannon & Co., has garnished various debtors of petitioner, whereby he and his customers are harassed and his customers driven off. Petitioner is a butcher. Green B. Sewell has never paid or accounted to that firm concerning any fertilizer claim he may have collected in its name, although he has so collected several hundred dollars; but deponent believes he has paid the entire sum collected to his brother J. D., and his attorneys, after keeping a large share for himself, thereby aiding J. D. to defraud his creditors and to cheat petitioner. Petitioner believes Green B. Sewell is insolvent, and knows J. D. is, unless his assignment is set aside. In 1893 Green B. Sewell, as assignee, sued petitioner in a justice's court, being represented by the same attorneys. His defence to the suit was, that the account as to the amount was correct, but that he had been garnished at the instance of Halls, O. & M., as above stated, and a judgment rendered against him in the garnishment proceeding, that when garnished he notified Green B. and J. D. Sewell of the fact, and also their attorneys. After litigating said claim he was finally compelled to pay it to their attorneys, making twice that he has paid said account. Said pretended assignee and his agents made no efforts to prevent judgment going against him in favor of Halls, O. & M. J. D. Sewell assigned to Green B. on November 6, 1885, and in his deed pretended to set out in full the names of his creditors and debtors and his assets, which deed has been recorded and accepted by Green B., who has collected several hundred dollars as such assignee. None of the guano accounts above mentioned, and especially that sued on against petitioner, is anywhere mentioned in that deed. J. D. Sewell claims they belong to Brannon & Co., when in truth they were the property of J. D. Sewell and should have been placed in the deed of assignment but were fraudulently left out. Petitioner had no notice of this

fraud until March, 1893, though he expressly charges notice thereof upon Green B. Sewell and Cobb & Beall who, with J. D. Sewell, are the real plaintiffs in the fraudulent judgment against him first above mentioned. He prays, that the judgment be set aside and the levy dismissed; for injunction against the sheriff, J. D. and Green B. Sewell and Cobb & Beall; that the deed of assignment be set aside; that Cobb & Beall, J. D. and Green B. Sewell refund to him the amount collected of him under the judgment against him in favor of Green B. as assignee, etc.

Cobb answered, that he brought the suit in favor of Brannon & Co., and after various trials obtained a judgment, false and fraudulent pleas intended for delay having been filed by Marchman; and after sufficient time had elapsed for *certiorari*, respondent had the execution issued and levy made.  At no time did Marchman deny in any way that the title to the account was not in Brannon & Co., though he knew or might have known that Brannon & Co. lived in Atlanta.  In 1888 respondent, as attorney at law, received the account from Green B. Sewell or G. W. Merrell for collection, Merrell being attorney for Sewell in the matter of the assignment.  The account was sued in the name of Brannon & Co., because no written transfer was made on it to any other person. Halls, O. & M. never obtained any judgment against Marchman on any suit or judgment against Sewell, nor had Marchman legally paid the sum due on the account to Halls, O. & M.  After said pretended summons of garnishment on Marchman, he without answering the same, and before judgment against J. D. Sewell, fraudulently colluded with Reese, attorney for Halls, O. & M., to defraud Brannon & Co., or the true owner of the guano account (not J. D. Sewell), and Marchman and Reese then and before had notice that the account did not belong to J. D. Sewell and that he had no interest

therein; but Marchman acting as he did and with the promise that Reese would hold him harmless, paid over to Reese the sum due on the account, all of which was pleaded and was in issue in all the trials of said case heretofore. Respondent received the account for collection from Green B., with the statement that it belonged to Brannon & Co., and not to J. D., or Green B. as assignee of J. D. He is informed and believes the account was turned over to Green B. for collection by S. A. Webzler acting as agent for Brannon & Co. The latter had transferred their contract with J. D. Sewell for the sale of guano, to said agent, to make settlement with J. D. Sewell as though he was acting as agent for Brannon & Co., and title to the account was never in J. D. Sewell. Respondent denied all charges of fraud, etc. Answers were also filed by Green B. and J. D. Sewell and Beall, the contents of which will sufficiently appear from what follows.

At the hearing Marchman introduced the judgment in favor of Halls, O. & M. against him, rendered at the April term, 1887, for $61.74 principal, and cost. This judgment was against him as garnishee, being a debtor of J. D. Sewell, a debtor of Halls, O. & M. Also a receipt on the judgment, by Reese, plaintiff's attorney, to Marchman, and by the clerk of the court, dated August 18, 1887, in full of the judgment. Also, the garnishment proceedings against Marchman, and the record of Sewell's assignment, in which nowhere appears the account in question. Also, affidavit of Brannon, that he alone composed the firm; that in 1885 he sold J. D. Sewell twenty tons of fertilizer for which Sewell paid; that Sewell alone owed him for the goods; that if any suit has been instituted on account of said goods, it has been without his knowledge or consent or connivance, and he now positively repudiates the same; that he sold only said goods to Sewell; that he never heard of the

suit or judgment in question until Reese informed him by letter, March 15, 1893; that he never employed Green B. Sewell as agent or any attorneys in the matter; that he has lived in Atlanta during and since 1885; that he never had any claim against Marchman; that the goods were sold to J. D. Sewell under written contract at a stipulated price, and that he alone was responsible to deponent under the contract; and that he knows not where the contract is, but supposes it is in possession or control of J. D. Sewell, who owes him nothing for guano. Also, affidavit of various citizens of Atlanta, as to the integrity of Brannon, the truth of which affidavit was conceded. Also, affidavit of Oscar Reese, that he never induced Marchman to pay Halls, O. & M. As their attorney he had a claim against J. D. Sewell, now in judgment. Sewell made no defence. Affiant, learning that Marchman was the debtor of Sewell, had him garnished. After this was done Marchman asked affiant, not as his attorney but as his friend, whether the money should be paid to Green B. Sewell, assignee of J. D. Sewell, who stated he was the agent of Brannon & Co., or to Halls, O. & M. Affiant then asked Marchman who he owed, and upon Marchman replying J. D. Sewell and not Brannon & Co., gave it as his opinion that Marchman had better not pay Green B. Sewell anything in any capacity. After this affiant saw J. D. Sewell's assignment of record, and among the list of assets there was no account upon which the judgment in question is based, and so informed Marchman, and told him that if what Marchman stated was true the whole assignment could be defeated. Marchman said it was true and he could prove it. Affiant made the examination because Marchman said he owed Sewell not only for the guano, the consideration of the present judgment, but also a small store account on which the assignee brought suit and recovered judgment and

which Marchman paid, as deponent is informed. During none of the trials were Brannon & Co. heard of. Deponent, in connection with his then partner, represented Marchman, and while suspicious that Brannon & Co. knew nothing about the suit nor had any interest in it, they were afraid to investigate, as it might result in injury to their client. After judgment in both cases, there being nothing to risk, investigation was had, with the result stated by Brannon in his affidavit. After judgment by Halls, O. & M. against Sewell, Marchman having made no answer, judgment was rendered against him for the same amount as against Sewell, over $400. After this was done, Marchman told affiant that the reason why he made no answer was sickness of himself and family and other circumstances. Affiant told him to state all he owed Sewell and he would obtain an order of court authorizing him to write off all but that from the judgment against Marchman as garnishee. This was done, and Marchman paid the same off to affiant, except $7.50; and he sent the amount to his clients, charging Marchman nothing.

For defendant was introduced affidavit of G. W. Merrell, that he wrote the deed of assignment and represented Green B. Sewell, assignee, for some time thereafter; that some one claiming to represent Brannon & Co. had a settlement with G. B. Sewell; that afterwards Marchman came to town with a bale of cotton to pay his guano debt and some other store accounts with J. D. Sewell, and claimed, before he paid, to have been garnished by Reese for a debt due by Sewell; that affiant told him the garnishment would not lie because Sewell had no interest in the claim as he had assigned; that Marchman voluntarily paid over these amounts, after this notice, to Reese, claiming Reese would hold him harmless, or words to that effect; that affiant warned Marchman against paying it over until after the garnish-

ment was determined, and that if he did so he would be responsible for the money; and he replied that Reese had become personally responsible for the money and was good.   Also, affidavit of Brannon, that he sold his contract with J. D. Sewell for the sale of fertilizers and all his interest therein, to one Webzler, of Baltimore, Md., with full power to claim all indebtedness and make settlements as though he was acting as affiant's agent; and that affiant does not know what disposition Webzler made of the accounts nor whether any settlement of the account against Marchman, for guano sold by Sewell under said contract with Brannon & Company, was ever made.

The injunction was denied, and plaintiff excepted.

OSCAR REESE and COBB & BROTHER, for plaintiff.

SIMMONS, Justice.

The facts alleged in the petition are set out in the official report.   Under these facts, the court erred in refusing the injunction prayed for.   The judgment obtained by Sewell against Marchman on the account which he (Sewell) represented belonged to Brannon & Co., for whom he claimed" to act as agent, did not estop Marchman, it appearing that Brannon & Co., knew nothing of the suit on the account, and, after the judgment was obtained thereon, disavowed any interest therein or any connection with the suit, and disclaimed all right to the proceeds thereof, and were neither making nor authorizing any effort to enforce the judgment, and that Sewell was attempting to enforce it in his own interest. If Brannon & Co. were attempting to enforce the judgment in their own interest, Marchman would probably be estopped, but, under the facts alleged, it would be grossly inequitable for Sewell and his attorneys to enforce the judgment for their own benefit, especially as it appears that Marchman has already paid the account

twice, and this is an attempt to compel him to pay it the third time.    *Judgment reversed.*