## O'BRIEN *et al. v.* SPALDING.

1 The act of August 4, 1887, now embodied in section 5271 of the Civil Code, which declares that "No attorney shall be competent or compellable to testify, in any court in this State, for or against his client, to any matter or thing, knowledge of which he may have acquired from his client, by virtue of his relations as attorney," has no application to the competency of an attorney as a witness with respect to essential facts attending the execution of a will in the preparation and as to the attestation of which he rendered professional services. In such a matter the attorney is not testifying "for or against his client," or for or against the interests of the client's estate.

2. The fact that the relation of attorney and client had, in a general way, existed for a considerable period of time between an attorney at law and another person, even if it continued to exist at a time when the latter consulted the former as to the making of a will, does not, in the trial of an issue of devisavit vel non, arising upon a paper propounded as the will of such other person and of which the attorney is the nominated executor, render him incompetent to testify as a witness to all pertinent facts within his knowledge, the witness not availing himself of his privilege as attorney to decline to testify, and the matters as to which he does testify not being such as are excluded from public policy. Accordingly it is lawful at such a trial to prove by the attorney that the alleged testator conferred with him as to the making of the will and gave instructions for its preparation (the nature of which the witness may state), and that these instructions were subsequently, by another attorney to whom they were communicated by the witness, and who was the draftsman of the instrument propounded, embodied therein.

3. An attorney at law who attested a will as a subscribing witness is, though he was employed to draft the same and attend to its execution, competent in the trial of an application for its probate to testify as a witness concerning the alleged testator's mental condition; also as to facts showing the latter's knowledge, or ignorance, of the contents of the paper, and as to all other pertinent facts attending the signing and attestation of the instrument.

4. It is not essential to the validity of a will that the testator should understand the meaning of all the technical terms and legal phraseology therein employed; it is sufficient if he understands the meaning and effect of the instrument as a whole, if the same truly expresses his testamentary intentions as to the disposition of his estate. Even if it were otherwise, there would be, in a given case, no cause for setting aside a will because of the testator's alleged ignorance of the meaning of such terms, when there was ample evidence to warrant a finding that they were explained to and fully understood by him.

5. The evidence, though conflicting, warranted the verdict, and there was no abuse of discretion in denying a new trial.

Argued June 7, 8, — Decided August 10, 1897.

Probate of will — appeal. Before Judge Lumpkin. Fulton superior court. September term, 1896.

Jack J. Spalding, as executor, offered a paper for probate as the will of Catherine T. Flynn. Caveats were filed by several persons, heirs at law of the last named, upon the grounds, that at the time of making the pretended will she was not of sound and disposing mind and memory; that it was not her will, because not freely and voluntarily executed by her; that she was led to believe the paper signed by her was her will, when in truth it was another and entirely different one, which

she knew nothing about; and that it was procured by misrepresentations and fraud. On the trial the jury found for the propounder, and a motion by the caveators for a new trial was overruled. For the other material facts see the opinion.

*John L. Hopkins & Sons, Payne & Tye* and *J. F. O'Neill*, for plaintiffs in error.

*N. J. & T. A. Hammond* and *J. T. Pendleton*, contra.

FISH, J. 1. The record before us discloses that Mr. King, an attorney at law, drafted the instrument offered for probate as the will of Mrs. Flynn, called in person upon her at her home in order that he might read the paper over to her and explain its legal effect, and was subsequently present when she signed it, assisting in and supervising the execution and attestation of the instrument, which he himself signed as one of the attesting witnesses. Whether, under the peculiar circumstances attending and leading up to Mr. King's connection with this matter, the relation of attorney and client existed between him and Mrs. Flynn, is a question as to which the parties are at issue. We shall, however, in dealing with certain other contentions on the part of the plaintiffs in error, based upon the idea that Mr. King was acting professionally in all that he did in Mrs. Flynn's behalf, assume this to be the truth of the matter, and thus give the plaintiffs in error the benefit of any doubt there may be in regard thereto. This course will not, on the other hand, be unfair to the defendant in error; for, as we shall endeavor to show, there is no merit in the plaintiffs' contentions above alluded to, even conceding the premise in dispute.

Complaint is made that, on the trial of the present case, Mr. King was introduced as a witness in behalf of the propounder of the paper offered for probate, and was allowed, over objection, to testify concerning its execution by Mrs. Flynn, as to her mental capacity to make a will, and as to what passed between them when he read over to her and explained the meaning of the instrument he had prepared for her to sign. It is contended by counsel for the plaintiffs in error, that as Mr. King sustained towards the testatrix the attitude of attorney

and confidential adviser, he was an incompetent witness to testify concerning any facts or circumstances, knowledge of which he had gained while attending to his professional duties in the premises. We do not, however, understand the law to be that the plaintiffs are at liberty to urge this objection. The purpose of the common-law rule declaring that communications between attorney and client are privileged is to protect the client. Greenough *v.* Gaskell, 1 My. & K. 98, 103. Strangers are not at liberty to invoke this rule in their behalf. Accordingly, it was early decided in England that: "In a suit by next of kin of a testator, challenging a residuary gift made by his will to the executors, on the ground that it was made on a secret trust for an illegal purpose, . . communications had between the testator and the solicitor employed by him to prepare the will, with reference to the will and the trusts thereof, were not privileged." Russell *v.* Jackson, 8 Eng. L. & Eq. 89, 15 Jur. 1117, 9 Hare, 387. The correctness of this position has received the unqualified recognition of the Supreme Court of the United States. Blackburn *v.* Crawfords, 3 Wall. 176. Indeed, the doctrine laid down by the English courts appears to have become the firmly established law of this country. Graham *v.* O'Fallon, 4 Mo. 338; Layman's Will, 40 Minn. 371; McMaster *v.* Scriven, 85 Wis. 162; Scott *v.* Harris, 113 Ill. 447; Doherty *v.* O'Callaghan, 157 Mass. 90, 34 Am. St. Rep. 258. In the case last cited, Lathrop, J., in pronouncing the opinion of the court, said: "Undoubtedly, while the testator lives, the attorney drawing his will would not be allowed, without the consent of the testator, to testify to communications made to him concerning it, or to the contents of the will itself; but after his death, and when the will is presented for probate, we see no reason why, as matter of public policy, the attorney should not be allowed to testify as to directions given to him by the testator, so that it may appear whether the instrument presented for probate is or is not the will of the alleged testator." In our investigation of this question, we have encountered numerous other authorities to the same effect, some of which may readily be found by reference to Whart. Ev. § 591, and 19 Am. & Eng. Enc. L. 142. It would

be unprofitable, however, to attempt to further sustain the position above announced by the citation of additional cases more or less in point, for the reason that counsel for the plaintiffs in error, in their written argument presented to this court, very frankly say: "By weight of authority under the common law it was held that the reason of the general rule does not apply to communications made to an attorney by a testator while giving instructions for drafting a will; that the protection which the rule gives and is intended to give is the protection of the client, and that it can not be said to be for the interests of a testator, in a controversy between other parties, to have those declarations excluded which are relevant and which were necessary to the proper execution of his will. . . In other words, we concede the proposition that under the common law the courts have held that an attorney can testify as to what occurred between him and the testator, and that it does not violate the policy of the law which gave birth to the rule." The real contention of counsel is, that the common-law rule in regard to privileged communications between attorney and client no longer obtains in Georgia, but has been changed by statute. The act relied on is that of August 4, 1887, which is now embodied in section 5271 of the Civil Code, and reads as follows: "No attorney shall be competent or compellable to testify in any court in this State, for or against his client, to any matter or thing, knowledge of which he may have acquired from his client, by virtue of his relations as attorney, or by reason of the anticipated employment of him as attorney, but shall be both competent and compellable to testify, for or against his client, as to any matter or thing, knowledge of which he may have acquired in any other manner." We are at a loss to perceive how the language employed in this statute can be construed as containing any intimation that it was designed to protect persons other than the client himself, and that therefore a stranger could invoke it in his behalf in a controversy to which the client was not even a nominal party. While the terms of this act may not be couched in the precise phraseology in which the common-law rule is usually stated, still any assumption that the legislature thereby intended to inaugurate

and declare an entirely new and radically different policy in the respect just indicated, must necessarily rest solely upon pure conjecture.

In *Freeman* v. *Brewster*, 93 *Ga.* 653, the act of 1887 was construed to mean what it in terms says, viz., that an attorney is incompetent to testify "for or against his *client*"; and it was accordingly said the statute had no application to a case in which the client himself was not before the court as a party at interest. To the present controversy, Mrs. Flynn, the "client," is neither a party plaintiff nor a party defendant. "In no sense of the word can the testatrix be called the 'other party,' in opposition to either the propounder or the caveators," in such a proceeding. *Brown* v. *Carroll*, 36 *Ga.* 570. Nor can it be said that, in a controversy of this nature, the attorney drafting the will is called upon to testify "for or against" the interests of his client's estate. On the contrary, the proceeding is simply one in which certain persons claiming under, and not adversely to, the "client" seek to have an investigation made into the circumstances attending the execution of the instrument offered for probate, in order that their rights in the premises may, as against the persons represented by the propounder, be finally adjudicated. It is a proceeding provided for and sanctioned by law, in which it is necessarily contemplated that the whole truth shall be elicited from every reliable source, to the end that full and complete justice may be done, not only to the living, but to the dead.

2. Objection was also raised to the competency of the propounder, Mr. Spalding, when offered as a witness in his own behalf. It appears that on various occasions, during a period of several years prior to the execution of the will, he had acted as the attorney and counselor of Mrs. Flynn. On the day the will was signed, she sent for him with a view to having him prepare the instrument. He called at her house, and was then told she wished him to become her executor. He demurred at first, but finally consented that he should be so nominated, at the same time declining, however, to act as her attorney in drafting the will, or in advising her in regard thereto, or in supervising its execution. He suggested that she procure his

partner, Mr. King, to perform this office, and she consented to this arrangement. Thereupon, acting in the capacity of friend and not as her legal adviser, he consulted with her as to her wishes in respect to the disposition of her property, made the memorandum from which the will was subsequently drafted, and delivered the same to Mr. King with the request that he act for Mrs. Flynn in the matter. Under the circumstances above recited, we have no hesitation in saying that, so far as the preparation of her will is concerned, the relation of attorney and client did not exist between her and Mr. Spalding. "Although consulted by a friend, because he was an attorney, yet he refused to act as such, and was therefore only applied to as a friend" in the consultation which followed between him and Mrs. Flynn, in which he took part only upon the express understanding that he should be so regarded. Story, Eq. Pl. (9th ed.) § 602; 1 Gr. Ev. § 244. "The true principle in reference to privileged communications between attorney and client is, that, where the attorney is professionally employed, any communication made to him by his client, with reference to the object or the subject of such employment, is under the seal of professional confidence, and is entitled to protection as a privileged communication. . . But to set the privilege in operation, the professional relation must exist, and some kind of professional employment is necessary. . . So where the attorney is consulted merely as a friend and not in a professional character, and neither the attorney nor the person consulting supposes the professional relation to exist between them," or where a communication is "voluntarily made to counsel after he has refused to be employed by the party making it," the rule first above stated has no application. Weeks on Attys. § 153. This distinction is unquestionably recognized and clearly expressed by our statute.

Obviously, therefore, there is no merit in the contention of counsel for plaintiffs in error, that Mr. Spalding was an incompetent witness concerning anything that occurred at the interview he had with Mrs. Flynn on the morning of the day she executed her will, even were the plaintiffs in error at liberty to urge this objection. As to the interview with Mrs. Flynn, some

two years previously in the presence of other persons, testified to by the witness, it may be remarked that there is abundant and respectable authority to the effect that testimony in regard to what then transpired should not be considered as coming within the rule relating to privileged communications. But be this as it may, we are of the opinion that, for the reasons stated in the first division of this opinion, the trial judge did not err in admitting any of the evidence in this connection to which objection was offered.

3. Still another exception taken alleges error on the part of the trial judge in admitting in evidence the paper offered for probate as the will of Mrs. Flynn, "to the reception of which caveators objected on the ground that it had not been attested nor properly proved by three competent witnesses, as required by law,—A. C. King being incompetent as a witness to attest or prove it, because of the relation of attorney and client between himself and Mrs. Flynn." If the objection urged be meritorious, this is a matter of which advantage may be taken by the plaintiffs in error; for though it is not their right to object to testimony given in this particular litigation by Mr. King, still if, as contended, he was an incompetent attesting witness at the time the will was executed, it never became a valid instrument, because attested by only two other persons, whereas our statute requires that there shall be at least three competent attesting witnesses to every will. We shall therefore deal with the question presented as if Mrs. Flynn herself were in life and sought to attack the validity of an instrument signed by her, on the ground that her attorney was an incompetent attesting witness thereto, and accordingly it had not been attested by the number of witnesses prescribed by law.

The practice of attorneys attesting deeds, wills, and like instruments, which they have drafted in accordance with instructions received of their clients, to be executed by the latter, has certainly long prevailed, both in England and in this country. It is equally certain that at common law attorneys have always been considered competent so to do. Doe v. Andrews, 2 Cowp. 846. And accordingly it was held by the Supreme Court of South Carolina, in a somewhat recent case, that: "An attorney

who signs his name as a witness to the execution of a mortgage prepared by himself may be called upon to testify as to what occurred at the time of such execution." Monaghan Bay Co. v. Dickson, 39 S. C. 146, 149, s. c. 39 Am. St. Rep. 705, citing a number of pertinent authorities. For the rule regarding privileged communications can not properly be said to apply where an "attorney, having made himself a subscribing witness and thereby assumed another character for the occasion, adopted the duties which it imposes, and became bound to give evidence of all that a subscribing witness can be required to prove. In all such cases, it is plain that the attorney is not called upon to disclose matters which he can be said to have learned by communication with his client, or on his client's behalf, matters which were so committed to him in his capacity of attorney, and matters which in that capacity alone he had come to know." 1 Greenlf. Ev. § 244; Story's Eq. Pl. (9th ed.) § 602. Counsel for the plaintiffs in error suggest that all of these authorities proceed upon the theory that, in assenting to the execution of a will or other instrument by his attorney, a client "waives" all right to thereafter invoke in his behalf the rule in regard to privileged communications, so far as that particular transaction is concerned. In support of this position, a number of New York decisions were cited, among them, In Re Will, of Coleman, 111 N. Y. 220, wherein a statute of that State (providing, in effect, that all communications between attorney and client are privileged and can not be divulged "unless with the consent of the client") was under consideration. It seems that the courts of New York have construed this statute to cover every kind of a communication, including instructions as to the drafting of a will; and unless the consent of the client to the disclosure thereof be secured while he is in life, the right to unseal the lips of his attorney dies with him, and can never thereafter be exercised. In order that this construction may not lead to embarrassment in a proceeding where a will is offered for probate, it is held that where a testator assents to his attorney attesting a will, this amounts to a full waiver and the demands of the statute are satisfied. Following up this line of argument, counsel then undertake in their brief to point out

that none of the various statutes on this subject of force in Georgia prior to 1887 were "simply declaratory of the common-law doctrine," and conclude by saying that "therefore all authorities cited — coming from other States or England — have no bearing upon this question, which is to be determined solely by the statute law of this State. Under the statute of 1887, a waiver of the privilege by the client is a legal impossibility, because it was never contemplated by the law-making power; and that is very clearly shown in the case of *Lewis* v. *State*, 91 *Ga.* 168."

We quite agree with the counsel in this construction of the act of 1887. What may or may not have been the effect of prior statutes is now immaterial. Granting that none of them were "simply declaratory of the common-law doctrine," it by no means follows that, after numerous statutory experiments and blunders, we have not finally, by our latest enactment, returned to the sound policy upon which that doctrine was based. Nor do we understand that the decisions above referred to, with the single exception of those construing the New York statute, proceed upon the idea that a client, by procuring the signature of his attorney as an attesting witness, "waives" the right to object to "privileged communications" being thereafter offered in evidence in a controversy respecting the transaction to which the client is a party. On the contrary, the real question at issue was, whether communications made under such circumstances *were* "privileged"—not whether, conceding them to be so, the client had "waived" all right to protection in regard thereto. In other words, it has been held, and we think correctly, that a client can not truthfully and honestly claim that he understood such communications to have been received by his attorney professionally, and under the seal of confidence, when the services of the latter as an attesting witness were avowedly rendered and accepted with a view to enabling him to testify in the event he might thereafter be called upon to do so. This certainly is the understanding sought to be conveyed by the extracts we have quoted from Greenleaf and Story.

By no means is a client permitted, under our statute, to waive the protection it affords. The act of 1887 is clear upon

this point. But this fact is not helpful in determining what really are, or are not, "privileged communications." The determination of this question must necessarily depend upon the circumstances under which the particular "matter or thing" claimed to be privileged came to be known to the witness. If "by virtue of his relations as attorney," he may not testify; otherwise, if "he may have acquired in any other manner" knowledge thereof. This is the test which our statute prescribes.

While a client has no power to waive his right to exclude this sort of incompetent testimony, still the law leaves it largely to him to render information which he imparts competent or incompetent as evidence to be used "for or against" him. For instance, a person may decline altogether the services of an attorney, or may employ him to attend to various different matters. A client may likewise confine his attorney's professional zeal to one branch only of a single subject-matter, or to a specified act in connection with a particular transaction. Evidently, in the present instance, Mrs. Flynn did not contemplate that her counselor should belong absolutely to her, body and soul, from the moment he entered her house up to his departure therefrom; nor could she have understood, under the circumstances, that everything he might hear or see while there would be forever locked under the sacred seal of confidence. On the contrary, she accepted his services as an attesting witness, doubtless under the belief and with the desire that, if ever called upon after her death, he would conscientiously and truthfully testify to everything that then and there occurred in connection with the execution of her will. That he has undertaken to do so involves no breach of propriety even. Certainly, the policy our statute was intended to subserve has not been defeated. It follows that if Mr. King was competent to testify to such matters as could properly be elicited from either of the other attesting witnesses, his signature to the instrument has the same legal effect as would that of a person whose competency to attest a will was beyond question. This being so, the paper offered in evidence could not be attacked on the ground of his alleged incompetency to

attest it. Whether, on the trial now under review, he may have been permitted to go further in his testimony than he would have been authorized to do in a proceeding to which his client was a party, is utterly immaterial. Suffice it to say he was at liberty to testify to everything essentially material to the inquiry whether the paper offered for probate was really the will, duly executed, of a person capable under the law of disposing of her property.

4. Another source of complaint is that the trial judge instructed the jury: "It is not necessary that he (the testator) should comprehend the provisions of his will in their legal form, or that he should be skilled in the law. It is sufficient if he have such mind and memory as to enable him to understand the elements of which it is composed, and the disposition of his property in its simplest form." The language above quoted is almost identically the same as that used in a charge in the case of *Stancell* v. *Kenan*, 33 *Ga.* 56, 64, which this court pronounced free from error. Read in connection with its immediate context, we are unable to perceive how the jury could possibly have failed to understand the instruction to which objection is made. But even were it open to serious criticism, we would not feel warranted, in the present case, in setting the verdict aside on this ground alone. It appears by uncontradicted evidence that the instrument signed by Mrs. Flynn was read over to her by the attorney who drafted it, that its legal terms and its practical effect were by him fully explained, and that she stated unequivocally to him that she fully understood its provisions and that they were in accord with her wishes.

5. The vital issue in the case was whether the testatrix was mentally capable of intelligently making a disposition by will of her property. Upon this vital point, as well as upon incidental issues involved, the evidence was conflicting. The jury were, however, fully warranted in returning a verdict in favor of the propounder; and consequently, we are not prepared to say there was any abuse of discretion on the part of the trial judge in refusing to grant a new trial.

*Judgment affirmed. All concurring, except Atkinson, J., absent.*