[No. 4567.]

## In the Matter of the Estate of Edward Shapter, Deceased.

**1. Wills—Testamentary Capacity—Evidence.**

The testamentary capacity of a testator at the time of making a will can only be ascertained by taking into consideration the direct proof and all collateral and relative facts and surrounding circumstances that tend to throw light upon the mental capacity of the testator at that time, and from which inferences might be drawn and presumptions raised as to whether or not he was mentally capable of making a will, and whether the disposition made of his property was consistent with his situation and in accordance with his privately expressed wishes and intentions, and such as he would naturally make under the circumstances, or adopt or acquiesce in, if not wholly deprived of consciousness.

**2. Same—Reading of Will—Presumption.**

Where a will was prepared at the testator's express request, and left with him several hours before it was alleged to have been executed, and he signed it in the presence of attesting witnesses who were present at his request for that purpose, in the absence of any showing to the contrary it will be presumed that he had read it or that its contents had in some way been made known to him, and the onus of proving the contrary is thrown upon him who alleges it.

**3. Same—Witnesses Signing before Testator.**

The fact that subscribing witnesses signed the will before the testator signed it does not invalidate the will.

**4. Same—Signature of Witnesses—Presumption.**

Witnesses attesting a will in the presence of the testator impliedly state that the testator is of sound mind and competent to make a will.

**5. Same—Probate—Testamentary Capacity—Adverse Testimony by Attesting Witness.**

Where, on application for the probate of a will, one of the attesting witnesses testifies that he believed the testator was not conscious of what he was doing when he made the will, such testimony does not impair the efficacy of the witness' attestation.

**6. Same—Due Execution—Subscribing Witnesses — Contradictory Evidence.**

It is not incumbent upon the proponent to prove all the facts constituting due execution of a will by the concurring testimony of two subscribing witnesses, for, while both of these wit-

nesses must be examined, the will may be established even in opposition to the testimony of both.

7. Statutes—Adopted from Another State—Previous Construction.

The rule is well settled that, in adopting the statute of another state, we adopt the construction given it by the courts of that state.

8. Witnesses—Competency—When Adverse Party is Executor or Administrator—Parties to Will Contest.

Parties to a will contest are not competent witnesses to testify, under 2 Mills' Ann. Stats., section 4816, providing that no party to any civil action or person directly interested in the event thereof shall testify when any adverse party sues or defends as executor or administrator.

9. Witnesses—Privileged Communications—Attorneys and Physicians.

The purpose of Mills' Ann. Stats., section 4824, subdivisions 2 and 4, in regard to privileged communications made to an attorney or physician is to protect the client or patient, and, although, while the latter are living, the former could not testify to such matters without their consent, the rule is otherwise after their death in regard to matters in dispute arising in probate between devisees and heirs.

10. Wills—Witnesses—Beneficiary—Competency.

Where a will provided compensation for legal services rendered and reimbursement for expenses of an attorney in administering a trust as executor, he is not such a beneficiary under the will as will render him incompetent to testify on the application to probate the will.

11. Same—Contest—Witnesses—Competency—Executors.

The executor of a will is a party to a will contest, and, therefore, not a competent witness, under 2 Mills' Ann. Stats., section 4816, providing that no party to any civil action or person directly interested in the event thereof shall testify when any adverse party sues or defends as executor or administrator.

*Appeal from the District Court of Arapahoe County. Hon. John I. Mullins, Judge.*

Messrs. Thomas, Bryant & Lee, and Mr. Edwin W. Parks, for appellants.

Mr. S. E. Robinson and Mr. Andrew W. Gillette, for appellees.

On March 1, A. D. 1901, an instrument purporting to be the last will and testament of Edward Shapter, deceased, was presented to the county court of Arapahoe county for probate. A *caveat* was filed by several of his heirs objecting to its probate. On the 30th of July, A. D. 1901, after hearing the testimony of the attesting witnesses and the family physician, the court admitted the will to probate and record.

An appeal from this judgment was taken by the contestants to the district court of Arapahoe county. On the 26th day of May, 1902, the cause came on for trial before a jury. After the evidence was introduced, the jury, by direction of the court, rendered a verdict for contestants. On June 6, motion for new trial was overruled, and judgment entered upon the verdict denying the probate of the will. Proponents bring the case here on appeal.

Mr. Justice Goddard delivered the opinion of the court:

The most important objection to the validity of the judgment presented by the assignment of errors is predicated upon the action of the trial court in directing a verdict. From an examination of the testimony introduced, we are of the opinion that there was evidence upon which the jury should have been permitted to pass and which, if accepted by them as true, was sufficient to sustain the conclusion that the instrument presented was executed in conformity with the requirements of the statute, and with sufficient knowledge and understanding on the part of the testator to constitute a valid testamentary disposition of his property. In the circumstances of this case, it was peculiarly within the province of the jury to determine whether the testator, notwithstanding his enfeebled condition at the

time the paper was signed, realized what he was doing. This essential fact could only be ascertained by taking into consideration not only the direct proof, but as well all collateral and relative facts and surrounding circumstances that tended to throw light upon the mental capacity of the testator at that time, and from which inferences might be drawn and presumptions raised as to whether or not he was mentally capable of making a will, and whether the disposition made of his property was consistent with his situation and in accordance with his previously expressed wishes and intentions, and such as he would naturally make under the circumstances, or adopt, or acquiesce in, if not wholly deprived of consciousness.

In *Brogden v. Brown,* 2 Addams's Eccl. Rep. 449, the will under consideration was prepared by Mr. Brogden in pursuance of instructions which, it was pleaded, the testatrix gave him in an interview at which they alone were present and which, it was claimed, was signed by her while delirious and incapable. Brogden, being a party in the cause, was incompetent to testify as to the instructions; hence they were incapable of direct proof. Sir John Nicholl, in speaking of the presumptions that prevail in such circumstances, used this language:

"The rule that, where capacity is at all doubtful, there must be *direct* proof of instructions * * * has really no application to a will prepared by an agent * * * and of which, at the same time, the dispositive part is so just, and so proper, so consonant to the deceased's natural affections and moral duties that it speaks for itself, and carries, upon the face of it, its own recommendation. Such an alleged will, if *suggested,* the court may readily presume that the alleged testator would acquiesce in, and adopt, if not wholly deprived of conscious-

ness; and mere acquiescence and adoption, in such a case, would so compensate for any want of *direct* evidence of instructions given, *a priori*, that proof of these alone, in conjunction with proof of almost any, whatever, *glimmering* of capacity at the time of the execution, would be good to support the will, and would *sufficiently* indicate mind and volition to justify a court of probate in pronouncing for it as a genuine and valid *will*."

As said by Senator Verplanck in *Stewart's Executor v. Lispenard*, 26 Wendell 312:

"If the testamentary disposition be in itself consistent with the situation of the testator, and in congruity with his affections and previous declarations; if it be such as might have been naturally expected from one so situated, this is itself rational and legal evidence of no small weight to testamentary capacity.   *   *   *   The rationality of the act goes to show the reason of the person. This rule has been repeatedly applied in English courts in cases of doubtful capacity, from age or deathbed disease."

The instrument under consideration possesses all these characteristics. The disposition of the property therein provided is consistent with, and such as would naturally be expected from, a man in the situation of the testator. He had lived in this country for many years, was unmarried, and it in no way appears that the contestants, although his relatives and heirs, ever concerned themselves about his welfare and condition. On the other hand, some of those remembered in the will had shown him kindness and attention when sorely needed. And others are of a class whose care and comfort would naturally appeal to the sympathy of an old man who was desirous of devoting his property to a worthy charity.

From the fact that the will was prepared at the testator's express request, that the instrument so prepared was left with him and was in his possession several hours before it was alleged to have been executed, and that he signed it in the presence of attesting witnesses who were present at his request for that purpose, in the absence of any showing to the contrary, it will be presumed that he had read it, or that its contents had, in some way, been made known to him. ''The onus of proving the contrary is thrown upon him who alleges it.''—*Hemphill v. Hemphill*, 2 Dev. 291.

''Generally speaking, the law presumes testamentary capacity, due execution, and that the will contains the unrestrained wishes of the testator. Hence it is usually held that the burden upon the whole evidence is on the party attacking it on the ground of improper execution, lack of capacity, or undue influence, to prove the facts which he alleges.''—Current Law, vol. 4, p. 1892, and cases cited in note.

But it is insisted that, if the instrument was, in fact, written at the direction of Shapter and embodied his instructions, it should be refused probate for the reason that it was not executed or attested in the manner required by our statute. In support of this contention, counsel for contestants cite excerpts from the testimony of the attesting witnesses which they claim show that Shapter was not conscious of what he was doing at the time his name was affixed to the instrument, and that the signatures of attesting witnesses were subscribed to the will before the signature of Mr. Shapter was made.

We think from the entire testimony introduced upon the trial, the jury might have found that the deceased was aware of what he was doing, and assented to the manner in which his signature was

made, and that the question as to whether he was
conscious and possessed of testamentary capacity
should have been left to them to determine from the
facts and circumstances surrounding the transac-
tion. The fact, if it be a fact, that the subscribing
witnesses signed the will before the testator signed
it, does not invalidate the will.—*Gibson v. Nelson,*
181 Ill. 122; *O'Brien v. Gallagher,* 25 Conn. 229.

They did attest the will in the presence of the
testator, and thereby impliedly stated that the testa-
tor was of sound mind and competent to make a
will.—*Stevens v. Leonard,* 154 Ind. 67. And the
statement of Mr. Young in the latter trial, to the
effect that he was of the opinion that Shapter was
not in a condition to make a will, and was too far
gone to be conscious of what he was doing, did not
impair the efficacy of his attestation, and should
be taken only for what it is worth as an attempt
tending to weaken the force of such attestation as
evidence of the mental soundness of the testator, and
the weight to be given to it for that purpose was
entirely within the province of the jury.

In *Stevens v. Leonard, supra,* Dowling, J.,
speaking on the subject, said:

"It cannot be thought possible that an honest
man, of ordinary intelligence, would subscribe his
name as a witness to an instrument executed by a
person whom he believed to be of unsound mind, or
under coercion or constraint. The fact that such a
man voluntarily identifies himself with the transac-
tion as a witness is an indication that, in his opinion,
the person executing the instrument is competent to
do so. The witness must be understood to attest not
merely the act of signing, but also the mental capac-
ity of the testator to sign. A subscribing witness
may, it is true, be heard to impeach the will; but, if
he assumes that attitude toward it, he does so at the

peril of his reputation for candor and veracity. * * * The credibility of the witness becomes at once a matter of serious inquiry, and his desertion of his position as a sustaining witness is an important fact for the consideration of the jury."

It is not incumbent upon the proponent to prove all the facts constituting due execution of a will by the concurring testimony of the two subscribing witnesses. Both of these witnesses must be examined, but the will may be established even in opposition to the testimony of both of them.—*Trustees of Auburn Seminary v. Calhoun,* 25 N. Y. 422; *Tarrant v. Ware,* (note) *Ibid,* 425; *Orser v. Orser,* 24 N. Y. 51.

In the latter case, the only surviving witness testified that the will was not signed, or the signature of the testator acknowledged, in his presence. A verdict against the will was set aside and a new trial granted, because the circumstances from which a due execution might be inferred had not been properly left to the jury.

It is further urged that the court erred in excluding the testimony of Mrs. Corbett on the ground that she was an interested party, and incompetent to testify under the provisions of section 4816, 2 Mills' Ann. Stats. Perhaps the weight of authority is in favor of appellants' contention that the probating of a will is a proceeding *in rem* and *ex parte,* and in which heirs and devisees are competent to testify, notwithstanding the inhibition of the statute as to parties in interest, but those decisions are predicated upon statutes materially different from our own, which was taken from Illinois, and is identical with the statute of that state. The rule is well settled that in adopting the statute of another state we adopt the construction given it by the courts of that state.

In several cases decided in the appellate courts of Illinois, before and since our adoption of the

statute, the competency of interested parties to testify in an action to contest, and in proceedings to probate, wills, has been considered, and it has been uniformly held that the provisions of· the statute under consideration render them incompetent to testify.—*Holloway v. Galloway,* 51 Ill. 159; *Crowley v. Crowley,* 80 Ill. 471; *Brace v. Black,* 125 Ill. 33; *Taylor v. Pegram,* 151 Ill. 106; *Volbracht v. White,* 197 Ill. 298.

While most of those cases were actions to contest the will after probate, we can see no reason why the same rule should not apply in proceedings to contest the probate of a will. The purpose of the proceeding is the same in each instance, to wit, to divest the legatees and devisees of all right in the estate of the testator, and vest the property in his heirs at law. In *Crowley v. Crowley, supra,* the contest, as in the case at bar, originated in the county court, and was tried on appeal to the circuit court before a jury, and the testimony of a witness who was a devisee under the will was held inadmissible.

Under the construction, therefore, that we are compelled to give this statute, the action of the trial court in excluding the testimony of Mrs. Corbett must be upheld.

Counsel for contestants contend that the testimony of Dr. Burnham and Dr. Grant was improperly admitted for the reason that they acquired their information as to the condition of Shapter while attending him as his physicians, and such information was, therefore, privileged under subdivision 4 of section 4824, and that Mr. McNeal was disqualified by subdivision 2 of said section, to testify to communications made to him by Shapter, because received by him in his capacity as attorney, and for the further reason that he was a beneficiary under the will.

The purpose of the statute in regard to privileged communications made to an attorney or physician is to protect the client or patient.—*O'Brien v. Spaulding,* 102 Ga. 490; *Doherty v. O'Callaghan,* 157 Mass. 90; *Glover v. Patton,* 165 U. S. 394; *Thompson v. Ish,* 99 Mo. 160.

In *Doherty v. O'Callaghan,* supra, it is said:

"Undoubtedly, while the testator lives, the attorney drawing his will would not be allowed, without the consent of the testator, to testify to communications made to him concerning it, or to the contents of the will itself; but after his death, and when the will is presented for probate, we see no reason why, as matter of public policy, the attorney should not be allowed to testify as to directions given to him by the testator, so that it may appear whether the instrument presented for probate is or is not the will of the alleged testator."

In *Thompson v. Ish, supra,* in which the competency of a physician to testify under a statute similar to ours was under consideration, Black, Justice, after citing and commenting on several cases, used this language: "We conclude * * * that when the dispute is between the devisee and heirs at law, all claiming under the deceased, either the devisee or heirs, may call the attending physician as a witness."

The objection that Mr. McNeal was rendered incompetent because an alleged beneficiary under the will, is equally untenable. The provision in his favor is to compensate him for his services, and to reimburse him for his expense in administering the trust as executor, and does not make him a beneficiary under the will.—*Reeve v. Crosby,* 3 Redfield Rep. 74; *Meyer v. Fogg,* 7 Fla. 292.

The further objection that Mr. McNeal was rendered incompetent to testify by the express terms of section 4816, 2 Mills' Ann. Stats., because a party

to the proceeding, is supported by the Illinois decisions construing the statute in like cases.—*Smith v. Smith*, 168 Ill. 488, 494; *Bardell v. Brady*, 172 Ill. 420.

We are, therefore, compelled to hold that he is not a competent witness while a party to the proceeding; but, with his testimony eliminated from the record, we think there still remains evidence tending to uphold the will which should have been submitted to the jury.

Our conclusion is, that the proponents are entitled to have the question in issue submitted to the jury under proper instructions as to the law governing the testamentary disposition of property.

The judgment is reversed, and the cause remanded.

*Reversed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE BAILEY concur.