In the Matter of the Probate of the Will of MARTIN LAYMAN.

April 22, 1889.

**Probate of Will—Burden of Proof of Sanity.**— Under the statutes of this state, (Gen. St. 1878, *c.* 47, §§ 15–17,) the burden of establishing the sanity of a testator is upon him who offers the will for probate.

**Same — Order of Proof.**— This view of the statute does not necessarily change the common practice, whereby the proponent first makes out a *prima facie* case, the contestant then introducing evidence of insanity, leaving to proponent the privilege of again submitting testimony as to the testator's soundness of mind.

**Same — Testimony of Testator's Attorney as to Conversations with Him.**—Upon the trial of an appeal from an order admitting a will to probate, an attorney at law, who had been the legal adviser of the testator, was permitted to disclose communications made to him by the deceased in his lifetime, upon business matters, and the advice and counsel given thereon. The object of the testimony was to lay a foundation for the admission in evidence of the opinion of said attorney as to the sanity of the testator, and there was nothing in the testimony which in any manner reflected upon the character or reputation of the deceased. *Held,* that the contestant, who was one of the heirs-at-law of the deceased, could not be permitted to exclude such testimony by invoking the rule of privileged communications.

From a judgment of the probate court of Hennepin county, admitting an instrument to probate as the last will of Martin Layman, deceased, the contestant, Lizzie Haley, a grand-daughter of the testator, appealed, on questions of law and fact, to the district court for the same county, where issues were framed and were tried before *Young,* J., and a jury. The verdict was in favor of the will, a new trial was refused, and the contestant appealed.

*Hart & Brewer,* for appellant.

*Wilson & Lawrence* and *R. W. Laing,* for respondents.

COLLINS, J. But two questions are presented for our consideration upon this appeal: *First.* Did the trial court err in admitting certain testimony of the witness Laing, objected to by the contestant on the ground that it was incompetent and inadmissible, by reason of Gen. St.

1878 c. 73, § 10 ?    *Second.*  Did the court err in charging the jury that
the burden of proof was upon the contestant, and that she must show
by a preponderance of testimony the loss or absence of the mental ca-
pacity required by statute to make a will?

The principal question in this case seems to have been as to the
sanity of the deceased when he executed the instrument offered for
probate, and alleged by the proponents to be his last will and testa-
ment.   The witness Laing was an attorney at law, and had prepared
the will in question.   He had also served the decedent in other mat-
ters as his legal adviser.   In this way he had acquired some knowl-
edge of the mental condition of the deceased, and was more or less
qualified to express an opinion as to his sanity.   Under the rule laid
down in the case of *Pinney's Will,* 27 Minn. 280, (6 N. W. Rep. 791,
and 7 N. W. Rep. 144,) that a non-expert must first disclose the facts
upon which his opinion may be predicated before he can be allowed
to express one upon the question of soundness of mind, the witness
stated his professional connection with the testator for quite a period
of time before his death, including the day upon which the will was
drafted and signed, and also testified that he had many conversations
with him, always upon legal business.   He was then permitted, the
contestant objecting, to narrate the details of the business which was
transacted, what the deceased counselled the witness about, what he
said, and what advice and counsel he was given by the attorney.
The full particulars of one or two interviews, in no manner connected
with the making of the will, were related to the jury.   These com-
munications between the decedent and his attorney were privileged
at common law as well as by statute, the object of the rule being the
protection of the client and his estate.   And while many text-writers
assert emphatically that the seal of secrecy remains forever, unless
removed by the party himself, there is an abundance of authority for
saying that, upon the decease of the only person who could, in his
lifetime, exercise the privilege of waiver, the rule should not be so
perverted by a strict adherence to it as to render it inconsistent with
its object, and thus bring it into direct conflict with the reason upon
which it is founded.   *Russell* v. *Jackson,* 15 Jur. 1117; *Blackburn* v.
*Crawfords,* 3 Wall. 175; *Groll* v. *Tower,* 85 Mo. 249.   The object of

the rule, so far as it relates to this class of communications, being the protection of the estate, there remains no reason for continuing it when the very foundation upon which it proceeds is wanting. The testimony called for was quite necessary in order to determine the weight which ought to be given the witness' opinion as to the mental condition of the testator, and his disclosures in no way reflected upon the character or reputation of the deceased. The testimony when given served to protect the estate, and tended to aid in a proper disposition of it. The issue in the case was as to the mental soundness of a person under whom each litigant claimed, and, whatever the result, the interest and the estate of the deceased were not prejudicially affected. It is not an action in which the success of an adverse third party must prove detrimental to the property. Neither of these litigants can be permitted to invoke the rule respecting privileged communications for the purpose of excluding material and important evidence of the character above described upon the only question involved in the dispute, namely, the sanity of the deceased. The testimony of the witness Laing was properly received.

At common law the legal presumption is that every man is of sound mind, and the burden of proof that he is not rests upon the party asserting the existence of an unnatural condition of the mind of the person whose act or condition is questioned; and the presumption that every one is considered and treated as *compos mentis*, in absence of proof to the contrary, prevails in this state, unless it is manifest from our statutes (Gen. St. 1878, *c.* 47) that a different rule has been prescribed when the question of the exercise of testamentary capacity is involved.

We have three sections of said chapter 47 which specify the proof required when a will is offered for probate. In section 15 the method is laid down, in case there is no contest. The court may, in its discretion, dispense with all but one of the subscribing witnesses. One, however, must testify to the execution of the will and the sanity of the testator, and this is imperative. Section 16 authorizes the court, in its discretion, to permit proof of execution of the will and the sanity of the decedent, by other witnesses, in case none of the subscribing witnesses reside in the state; but there must be proof of the sanity

of the testator and of his handwriting, as well as proof of the handwriting of the witnesses. The next section (17) is peremptory in its provisions, and declares that no will shall be effectual in the probate court nor in the district court upon appeal, unless proved and allowed in the exact manner prescribed in said sections 15 and 16, which are the only sections of the chapter in which we discover any rules for the guidance of the courts in the matter of proof. We find, therefore, the duty imposed upon the probate court by section 15 to secure the testimony of at least one of the subscribing witnesses in all cases, and without regard to a contest. By the next section the court is permitted, in its discretion, to hear testimony of the same import, but from other than the subscribing witnesses; while section 17 expressly and emphatically provides that unless testimony is received of the proper execution of the alleged will and of the sanity of the deceased when executing it, it shall not be effectual to pass either real or personal estate. The question now under discussion is not new in the English and American courts, and has caused much contention with varying and diverse results; one class of authorities being to the effect that the common-law presumption of sanity prevails, the other that, as wills are usually executed in sickness or old age, frequently *in extremis*, the general presumption does not obtain, and the *onus* remains with the proponent until the end. A majority of this court are of the opinion that by the use of the language found in the sections before mentioned, (which is peculiar to the statutes of this state,) the legislators intended to fall in line with and adopt the class of cases last referred to; to declare that the burden of proof is upon the proponent, and that unless it is affirmatively made to appear that the instrument offered for probate was properly executed by a competent person, the administration provided by law for the estates of those dying intestate must prevail.

It may be said, in conclusion, that, if the presumption of sanity exists at any time during the proceedings, it is not at the outset, and that it would be surprisingly incongruous to conclude that such a presumption should not have its legitimate effect in the first instance, as well as in the final result. We may also add that our views upon this question do not necessarily change the convenient and perhaps prevailing

practice whereby the proponent first makes a *prima facie* case, then the contestant introduces evidence of insanity, giving to proponent the privilege of again submitting testimony as to the testator's soundness of mind. As the charge of the court upon this point was erroneous, a new trial must be granted.

Judgment reversed.