## In re YOUNG'S ESTATE.

No. 1866.   Decided March 5, 1908 (94 Pac. 731).

1. WITNESSES—COMPETENCY—PRIVILEGED COMMUNICATIONS — ATTORNEY AND CLIENT—STATUTES.   Under Revised Statutes 1898, section 3414, subd. 2, providing that an attorney cannot ·without consent of his client be examined as to any communication made by the client to him or his advice given therein in the course of his professional employment, the privilege of excluding the attorney's testimony is purely personal to the client as at common law, the statute being merely declaratory of the common law, and the fact that the common-law privilege was declared by statute did not extend the scope of its operation.

2. SAME—COMMUNICATIONS TO PHYSICIAN.   At common law, communications between physician and patient were not privileged, and the right of the patient to exclude testimony by the physician as to such communication rests upon statute.

3. SAME — COMMUNICATIONS TO ATTORNEY — INSTRUCTIONS AS TO WILL.   In a contest between heirs and beneficiaries to declare testator's will invalid because of undue influence and want of testamentary capacity, the attorney who prepared the will under the direction of deceased may be required to testify as to communications made to him by his client during the preparation of the will which are relevant to the issues, including the contents of a former will which testator had made, and neither side can exclude such testimony under the rule making communications between attorney and client privileged, as that rule does not apply to will contests, on the ground of mental incapacity or undue influence.[1]

4. WILLS—REQUISITES AND VALIDITY—UNDUE INFLUENCE—EVIDENCE—ADMISSIBILITY—FORMER WILL.   In a contest between heirs and beneficiaries to have a will declared invalid on the ground of undue influence and want of testamentary capacity, evidence of the contents of a former will may be material on such issues and should be admitted unless it is clear beyond a reasonable doubt, under all the circumstances, that the changes in the latter will could not affect the result of the contest.

5. SAME.   A testator not only has the legal right to make a will, but he may make as many wills as he chooses, and the mere fact that a change is made in a later will is not of itself evidence that testator was unduly influenced in making such change.

---

[1] Ewing v. Van Alstine, 26 Utah 193, 72 Pac. 942; Munz v. Salt Lake City R. Co., 25 Utah 220, 70 Pac. 852.

6. TRIAL—RECEPTION OF EVIDENCE—OFFER OF PROOF—EVIDENCE PARTLY IMMATERIAL. While the exclusion of evidence is not erroneous where it appears from the offer that it was immaterial, offers of proof need not be made in all cases, and will not control in all cases when made, and, in a will contest, where questions were asked an attorney as to what testator said concerning his will when making it, which the witness refused to answer, the fact that the offer of proof included some immaterial matter did not exclude the proof of that which appeared material.

APPEAL from District Court, Utah County; Jno. E. Booth, Judge.

Proceedings in the matter of the estate of Branch Young. From a judgment sustaining the will, contestants appeal.

REVERSED, AND NEW TRIAL ORDERED.

*Samuel A. King* and *Wm. H. King* for appellants.

*Grant C. Bagley* and *Thurman, Wedgewood & Irvine* for respondents.

FRICK, J.

This proceeding was begun in the district court of Utah county to establish a writing purporting to be the last will and testament of Branch Young, deceased. Objections were filed to the allowance of the proposed will by some of the children of the deceased upon the ground that it was made under coercion, duress, and undue influence, which were alleged to have been exerted upon the mind of the deceased by his wife, who was a beneficiary named in the will, and that such undue influence was exerted at a time when the testator was old, infirm, and of feeble mind.

On the hearing of the contest before the court the protestants called as a witness one A. B. Morgan, an attorney at law, who prepared the proposed will under the directions of the deceased. The witness testified that while the will was being prepared he had several conversations with the deceased and his wife concerning the provisions contained therein; that the deceased at the time presented to the witness a former will which had not been formally executed; that there was some

change made in the bequests by the new will; that the witness had prepared several wills at the request of the deceased immediately preceding his death, and that his wife, one of the principal beneficiaries of the proposed will, was present and took part in a number of conversations between the witness and the deceased with respect to the proposed will. The protestants then propounded some questions to the witness in which they asked him to state how many wills he had prepared for the deceased; what was said by the deceased with respect to the changes that were made in the proposed will as compared with the former one; and to state what was said by the witness, the deceased, and the wife of the deceased with regard to the proposed will. The witness refused to answer upon the ground that all the matters inquired about were privileged. The court sustained the witness with regard to all statements made by the witness and the deceased, both with respect to the former and the proposed will, and denied the request of the proponents to require the witness to answer, except as to statements the wife may have made. The witness however said that he could not select from the conversations all the matters stated by the wife without also disclosing some things said by the deceased, and refused to answer, over the protestants' objections. The court did not compel the witness to answer, but, in effect, permitted him to determine for himself when any statement made by the wife could or could not be answered without violating the privilege. During the hearing it was also made to appear that the former will was either lost or destroyed, and that the witness had read it and knew in a general way at least the contents thereof. For the purpose of showing that some changes had been made in the proposed will in some of the bequests, and what those changes were, the proponents asked the witness to state the contents of the former will in that regard. This testimony sought to be elicited was excluded by the court as privileged, to which rulings of the court contestants duly excepted. Judgment was entered sustaining the will, from which the protestants have appealed, and now present the foregoing, among other matters, for review. The contest-

ants contend that the matters inquired about were not privileged, and assign the rulings of the court as error.

One question presented for review is, to what extent does the privilege between attorney and client prevail where the question arises in a will contest after the death of the client? Is the privilege the same in such a case as it is between an attorney and client with respect to all other matters arising before or after the death of the client? Subdivision 2 of section 3414, Revised Statutes 1898, so far as material to the present inquiry, provides as follows: "An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him, or his advice given therein in the course of professional employment." It will be observed that, under the foregoing provision, the privilege therein given, as at common law, is purely personal, and belongs to the client. If the client waives the privilege, neither the attorney nor any one else may invoke it. It is likewise apparent that the privilege given by the statute is simply declaratory of that existing at common law. Without this statute, therefore, in view of section 2488, Revised Statutes 1898, in which the common law of England is adopted, the privilege would exist and be in force in this state. The mere fact that the common-law privilege is declared in statutory form does not extend the scope of its operation. The material question, therefore, is, did the privilege at common law extend to will contests between heirs of the deceased ancestor, where the issues of duress, undue influence, or insanity are involved?

Prof. Wigmore, in his work on Evidence, vol. 4 section 2314, in concluding a discussion of the question of privilege, as applicable to an attorney and client in cases of will contests, states the rule as follows:

"But for wills a special consideration comes into play. Here it can hardly be doubted, that the execution and especially the contents are impliedly desired by the client to be kept secret during his lifetime, and are accordingly a part of his confidential communications. It must be assumed that during that period the attorney ought not to be called upon to disclose even the fact of a will's execution, much

less its tenor. But, on the other hand, this confidence is intended to be temporary only. That there may be such a qualification to the privilege is plain. That it appropriately explains the client's relation with an attorney drafting a will seems almost equally clear. It follows, therefore, that after the testator's death the attorney is at liberty to disclose all that affects the execution and tenor of the will. The only question could be as to communications tending to show the invalidity of the will, i. e., from which a circumstantial inference could be drawn that the testator was insane or was unduly influenced. It may be conceded that the testator would not wish the attorney to assist in any way the overthrow of the will. But the answer is that such utterances were obviously not confidentially made with reference to the secrecy of the fact of insanity or undue influence, for the testator of course did not believe those facts to exist, and therefore could not possibly be said to have communicated them. · As to the tenor and execution of the will, it seems hardly open to dispute that they are the very facts which the testator expected and intended to be disclosed after his death; and, with this general intention covering the whole transaction, it is impossible to select a circumstance here or there (such as the absence of one witness in another room) and argue that the testator would have wanted it kept secret if he had known that it would tend to defeat his intended act. The confidence is not apportionable by a reference to what the testator might have intended had he known or reflected on certain facts which now bear against the will."

The Supreme Court of Iowa, in a well-considered case, entitled *Winters v. Winters,* 102 Iowa, in speaking of the privilege, at page 57, 71 N. W., at page 185 (63 Am. St. Rep. 428) says:

"At common law, confidential communications to a physician were not privileged, and they are only so made by statute. Those to an attorney, however, were privileged, and it was held that the attorney might not divulge without the consent of the client while living, but that, after his death, in a contest between a stranger and an heir, devisee, or personal representative, the latter might waive the privilege and examine the attorney concerning the confidential communications, though the stranger was not permitted to do so; and in a controversy between heirs at law, devisees, and personal representatives, the claim that the communication was privileged could not be urged, because, in such a case, the proceedings were not adverse to the estate, and the interest of the deceased, as well as of the estate, was that the truth be ascertained."

In the following cases the doctrine of privilege between an attorney and client is discussed, and it is held that communications or statements made by the deceased to the at-

torney preparing the will with respect to the subject-matter thereof and what the attorney heard or saw with respect thereto do not fall within the privilege: *Scott v. Harris,* 113 Ill. 447; *Doherty v. O'Callaghan,* 157 Mass. 90, 31 N. E. 726, 17 L. R. A. 188, 34 Am. St. Rep. 258; *Glover v. Patten,* 165 U. S. 394, 17 Sup. Ct. 411, 41 L. Ed. 760; *O'Brien v. Spalding,* 102 Ga. 490, 31 S. E. 100, 66 Am. St. Rep. 202; *Graham v. O'Fallon,* 4 Mo. 338; *In re Semper's Estate,* 82 Minn. 460, 85 N. W. 217; *McMaster v. Scriven,* 85 Wis. 162, 55 N. W. 149, 39 Am. St. Rep. 828; *Blackburn v. Crawford,* 3 Wall. (U. S.) 175, 18 L. Ed. 186; 3 Jones, Ev., section 773; 2 Rice, Ev., pp. 649-651; *In re Layman's Will,* 40 Minn. 371, 42 N. W. 286. In some of the cases a distinction is sought to be made between a protestant and a contestant of a will, and it is accordingly held that the privilege does not apply when the attorney is called in support of a will. Such cases, however, are not numerous, and the reason for the holding is fairly stated in the case of *In re Nelson's Estate,* 132 Cal. 182, 64 Pac. 294. Where the grounds of contest are duress, undue influence, or incapacity, we cannot perceive upon what reason such a distinction can arise. The privilege belongs to the client and he may waive it or enforce it as to him may seem proper. The policy upon which the privilege rests is humane in purpose, practical in its application, and salutary in its results when applied as it was intended it should be under the rules of the common law. The sole purpose of the privilege was to protect the client's interest. Under it he could freely communicate to the attorney all matters relating to a controversy between himself and another without fear of having such matter divulged by his attorney. In this way the client could obtain the benefit of the advice and counsel of one learned in the law without being exposed to the danger of having his statements turned into a weapon against him. If such were not the law no man could safely seek or obtain advice and counsel from an attorney, and the very purpose for which such advice is usually sought would be frustrated. But do these reasons apply to will contests where capacity or undue influence are in issue? What

is the purpose of such a contest? It can have but one purpose namely, to determine whether or not the document presented as the last will and testament of such a deceased person is really such. Can it be contended upon any reasonable ground that the testator had any interest in or desire to conceal his real intentions in such a matter when such intentions are called in question after his death? Did he not know when he had the will prepared that it would have to be made public and established as his will in a proper court before it could become effective? If, therefore, the document produced is not actually his will, but rather that of another who induced him by undue influence over him to make it, can it be said that the deceased wants such a will established as his own? Would not the law in holding to such a policy foster that which it abhors, namely, deceit and fraud? In this regard, who may raise the question? Certainly not strangers to the estate, but only those who are either heirs at law of the deceased or those who are beneficiaries of his bounty and made so by the will. If a particular beneficiary obtained the bequest through duress, deceit, or undue influence over the mind of the testator, should such beneficiary be permitted to invoke this most salutary privilege against the real heir, and thus, perhaps, be enabled to conceal the very thing the law abhors, and for which it wisely requires the probate of all wills? Moreover, is the right to invoke the privilege to be given to one heir who proposes the will, and denied to the other who opposes it?

The authorities cited above make it reasonably clear that the right to invoke the privilege was withheld from both at common law when the issues involved affected the integrity of the will. If this be so, why should not the attorney who prepared the will be required to disclose all that he knows concerning the real state of mind of the testator? The attorney may know by whom and to what extent the testator was influenced. Again, he may know that the testator was not influenced at all and may further know the very reasons that controlled him in doing what he did in making the will. In the first instance should the person causing the will to be made be protected

by the privilege? And in the latter case should the one who claims undue influence be permitted to invoke it and thus make certain circumstances to which he points and which may be easily explained to stand as the real truth? The privilege was not extended to will contests at common law, and, as our statute is no broader than the common law upon the subject, we have no right, even if we were inclined to do so, to extend the privilege to will contests.

It is urged that the case of *In re Estate of Van Alstine,* 26 Utah 193, 72 Pac. 942, is decisive of the question here presented; that in that case this court held that where the insanity of the testator was involved the attending physician was incompetent to testify concerning the testator's mental condition; and that no distinction with regard to the privilege can be made between an attorney who is professionally consulted in preparing a will and an attending physician. It is true that in that case this court held that the contestants could invoke the privilege against the attending physician. The question, however, was not discussed; and the decision was based upon the authority of *Munz v. Salt Lake City Ry. Co.,* 25 Utah 220, 70 Pac. 852. The later case referred to was an action for personal injury, and the doctor was called to testify against the injured person whom he had treated for the injury. At common law the privilege did not extend to physicians, and the statute upon which the *Munz Case* is based was enacted to protect the patient in just such cases. All the other cases, except *Renihan v. Dennin,* 103 N. Y. 573, 9 N. E. 320, 57 Am. Rep. 770, cited in support of the decision in the *Van Alstine Case,* are cases involving the question involved in the *Munz Case.* In all the cases cited the doctor was called to testify against the patient, and the privilege was invoked and allowed in favor of the patient in a case in which he was a personal actor. The case in 103 N. Y., 9 N. E., 57 Am. Rep., was a will contest, and the decision was based upon a special statute which provided that the inhibition of the doctor to testify would apply to every examination, unless the inhibition was expressly waived by the patient. In *Loder v. Whelpley,* 111 N. Y. 248, 18 N. E. 877, the same

rule was extended to an attorney who prepared the will, and this was likewise done in view of the New York statute. The statute upon which this rule is based is as follows:

"An attorney or counselor at law shall not be allowed to disclose a communication made by his client to him or his advice given thereon in the course of his professional employment." (Code Civ. Proc. N. Y., sec. 835.)

This is a positive inhibition enjoined upon the attorney, and he is prohibited from disclosing any communication made by the client to him in a professional capacity. At least, this is the view the New York court took of it. The client being dead, and not present to waive the privilege, if it were no more than that, the court held it could not be waived at all in such a case. The case in 111 N. Y., 18 N. E., is referred to in *Doherty v. O'Callaghan,* supra, and it is there pointed out that the New York decision must rest upon the New York statute alone, since the rule adopted in the New York case was not the rule at common law. It was likewise held in *Gurley v. Park,* 135 Ind. 440, 35 N. E. 279, that the deceased's physician could not testify in a will contest respecting the deceased's mental condition. This decision also rests upon the Indiana statute. The Supreme Court of that state subsequently held, however, in *Morris v. Morris,* 119 Ind. 341, 21 N. E. 918, that the privilege could be waived by the personal representative of the deceased in a will contest, and that it was so waived by calling the physician as a witness. As we have pointed out, however, the distinction of permitting one side of a will contest to waive the privilege while denying such right to the other, is purely arbitrary and without sound reason, and the weight of authority is against it.

In this connection it should not be overlooked that the courts whose decisions are cited in the *Van Alstine Case* utterly repudiate the doctrine announced in that case when applied to will contests. As an instance of this we need only refer to the Iowa and Missouri cases cited in the *Van Alstine Case.* The courts of both those states are uncompromisingly

opposed to the doctrine announced in the *Van Alstine Case,* as is evidenced in *Winters v. Winters,* 102 Iowa 58, 71 N. W. 184, 63 Am. St. Rep. 428, and *Graham v. O'Fallon,* 4 Mo. 338. The courts last referred to, however, are in thorough accord with the doctrine of privilege as applied in the *Munz Case* and cases of that character. They, however, make and maintain a distinction between will contests and other cases, and we think such a distinction is sound and should be enforced. Whether there is, or should be, a distinction with regard to the privilege between a physician who attends a patient in his last sickness and an attorney who prepares his client's last will in testifying to the mental condition or state of mind of the testator, or in disclosing other matters that may affect the integrity of the will, is not directly before us, and need not be determined. As we have shown, the privilege with regard to physicians is a creature of the statute, while as to attorneys it is a part of the common law. If it is found in a statute, and the statute is declaratory of the common law merely, as in this state, the statute should be applied under the rule in force at common law. If, therefore the privilege as to attorneys did not apply at common law in the land of its birth, and the authorities we have cited clearly show that it did not, it should not be declared to be the law in any state where the common law has been adopted, and we are not disposed to do so. The rules of evidence as evolved by the courts never were intended to be so applied as to conceal the truth. Under modern jurisprudence the privilege extended to clients never can have that effect where the client is living and personally interested. He may be called as a witness at any time and place, and must, like every other witness, make full disclosure of all the relevant facts within his knowledge, whether for or against his interests. In will contests, however, where such contest is based upon the grounds of duress or undue influence, the influence usually consists of secret acts of another which speak only through the acts of the testator. If the testator made any disclosure of such acts, either by word or conduct, to the attorney preparing the will, no privilege is invaded, and no

possible harm can come to any one by compelling the attorney to testify concerning them. We are constrained to hold, therefore, that as between heirs or beneficiaries of a deceased person in a will contest, where undue influence or want of capacity are in issue, neither side can invoke the privilege as against the testimony of an attorney who prepared the will under the direction of the deceased, and the attorney should be required to disclose all matters relevant to such issues the same as any other persons cognizant of the facts would be.

The proponents also offered to prove by the attorney the contents of a former will. This was objected to upon two grounds, namely, that it was immaterial and privileged. The court sustained the objection on both grounds. We do not think, for the reasons above stated, that the matter was privileged. Nor was it necessarily immaterial. Where a contest is based upon duress, fraud, or undue influence, the provisions contained in a former will may become very important. If it can be shown that the bequests in favor of the person who is charged with having exerted the undue influence are the same, or substantially so, in the later will as they were in the former one, and that the influence was not present when the former will was made, it may be a conclusive answer to the charge of undue influence. If, however, it should appear that the bequests in favor of the person charged with having exerted undue influence are enlarged in the later will, and no reason for this is made to appear, while the surrounding conditions and circumstances are such as would make it probable that the person charged did exert undue influence over the mind of the testator, then again such facts may become very material in determining the issue. In this connection it should not be overlooked that any person not only has the legal right to make a will, but he has likewise the right to make as many different ones as he chooses, and to make them in accordance with the dictates of his own conscience and judgment. The mere fact that a change is made in a later will, of itself, may be no evidence whatever that the testator was unduly influenced to make such a change. But the triers of

the facts should be placed in possession of all of the facts and circumstances, as they may have affected the testator, and from them all determine the ultimate fact sought to be reached in such a contest. In this regard much may depend upon the length of time that elapsed between the prior and later will. The changes in the conditions as they may have affected the beneficiaries of the deceased's bounty; their conduct and demeanor towards him; the services or kindnesses they may have rendered or shown him in the later years of his life; and, in short, all the circumstances that may affect a person of feeble health or mind should be considered. Changes made in a later will may therefore be of some probative force and should not be excluded from consideration, unless it is made clear beyond a reasonable doubt by all the evidence and circumstances that the changes could in no event affect the result of the contest. Such changes, if any exist, merely go to the intention of the testator, and, like other declarations which in some way manifest these intentions, always are admissible if not too remote.

In 1 Underhill on Wills, sec. 134, the rule is well stated in the following language:

"The testator may at any time revoke his will; and the fact that he does so arbitrarily and without giving his reason for so doing raises no presumption that a new will, executed to revoke the former or to take the place of it, was unduly procured. The force of proof of a change of testamentary disposition depends wholly upon the circumstances of the particular case. If the earlier will was a natural one, according to the circumstances surrounding its execution, the execution of a later instrument of a character directly contrary is material. And if the testator, at the time of the execution of the later will, which is not only unnatural, but directly contrary to his previous fixed and declared intention, is in feeble health, and is surrounded by those who are favored by the later will, a suspicion of undue influence, to say the least, is created. It would certainly be proper for the court, under such circumstances, to scrutinize all the evidence very closely to ascertain if the later will is the result of coercion or fraud, or if it was freely and voluntarily executed."

Upon this subject, Mr. Justice Campbell, in the case of *Beaubien v. Cicotte,* 12 Mich. 488, says:

"It is true, of course, that making one will does not, of itself, render it at all unlikely that another will may be substituted; but previous preferences and plans may have a plain bearing upon an issue, where the question arises whether the testator has understandingly, and of his own free will, changed his settled views. No case has been. cited holding such proof inadmissible. It is of frequent occurrence in the cases reported."

In support of this he cites a number of both English and American cases. The doctrine is also supported by the following authorities: *Bulger v. Ross,* 98 Ala. 272, 12 South. 803; *In re Selleck's Will,* 125 Iowa, 678, 101 N. W. 453; *Doherty v. O'Callaghan,* 157 Mass. 90, 31 N. E. 726, 17 L. R. A. 188, 34 Am. St. Rep. 258; Schouler on Wills, sec. 242.

In some of the foregoing cases the question was squarely presented as to whether the attorney who prepared the later will should be required to testify to the contents of a former will, and it is held that it was not a matter of privilege at common law, and that he should be required to testify. It is argued, however, that the protestants, in this connection, made certain offers of proof respecting the contents of the prior will, and that it was made to appear what the changes were, and hence the proof offered was immaterial. In this connection the general rule is invoked that the evidence offered must appear to be relevant and material or no error can be predicated upon the ruling excluding it. It must be remembered that in connection with the changes in the last will the protestants also offered to prove the declarations of the deceased made by him at the time the changes were made. All this was excluded. It is true that as the offer stands nothing seems very material, except, perhaps, the declarations of the testator made in connection with the last will. Nor are we inclined to depart from the general rule that unless it appears from the offer the evidence is material the ruling of the court will be upheld. The reason upon which the rule rests is that the party offering the testimony must know what it is, and if, upon his statement, it is not material, no error can be committed by its exclusion. But offers of proof need not be made in all cases, nor should they control in all cases where

the attorney chooses to make them. This case affords a practical illustration that the exception is as well founded as is the rule itself. The witness in this case refused to disclose to any one what the testator said at any time concerning the will. He so refused upon the ground that it would be against the law and unprofessional to do so. How could the protestants, therefore, know that which was rigorously concealed from them? The best they could do was to hazard a guess as to what the attorney would testify to. This counsel undertook to do in making the offer. The mere fact that the offer included some matters that were not material, in view of the situation that confronted counsel, should not have precluded them from proving that which appeared material. The witness was determined not to disclose anything that was said or transpired between him and the deceased, and was of that state of mind all the time. Counsel plied him with numerous questions, but with no avail. The court upheld the witness in his attitude in so far as the questions related to anything the deceased said or did. Whether anything the deceased said or did with regard to the will, or the changes therein, as compared with the former one, would have affected the result, we cannot say; nor could the trial court say, because he refused to hear it. What, if any, effect shall be given it can only be determined after it is disclosed and weighed, compared, and reconciled with all the other evidence in the case. The protestants were not permitted to present their whole case, and the court did not hear it. This, as we have heretofore held in *In Re Miller's Estate* ·(Utah), 88 Pac. 338, it was the duty of the trial court to hear and pass upon. We cannot say in advance what, if any, effect the excluded evidence should be given. From the record it is manifest that the witness should have answered the questions with respect to what passed between him and the deceased in the preparation of the last will, and he should also have disclosed the contents of the former will so far as he knew them, for the purpose of bringing them before the court; and he should likewise have stated all that was said and done by the wife of the deceased, which he did not do.

The judgment is therefore reversed, with directions to the lower court to grant the motion for a new trial, and to proceed with the case in accordance with the views herein, expressed. Appellants to recover costs of this appeal.

McCARTY, C. J., and STRAUP, J., concur.