No. 18,984.

ARCHIBALD BLACK et al., *Appellees,* v. RALPH L. FUNK,
Individually and as Executor, etc., *Appellant,* and
LIZZIE ADAMS et al., *Appellees.*

### SYLLABUS BY THE COURT.

WILL — *Contest — Undue Influence — Evidence—Attorney Who
Drew Will Competent Witness.* Section 321 of the civil code,
providing that an attorney shall be incompetent to testify
concerning communications made to him by his client in that
relation, is declaratory of the common law and does not pro-
hibit an attorney from testifying to the facts relating to the
preparation and execution of a will drawn by him, including
the information imparted by the testator, in a proceeding
to contest the will on the ground of undue influence and fraud.

Appeal from Brown district court; WILLIAM I.
STEWART, judge. Opinion filed October 10, 1914. Af-
firmed in part and reversed in part.

*Sample F. Newlon,* of Hiawatha, and *S. M. Brewster,*
of Troy, for the appellant.

*James Falloon, F. M. Pearl,* both of Hiawatha, and
*J. S. Rust,* of Kansas City, Mo., for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action in the district court was one
to contest the will of Mattie J. Adams. The grounds
of invalidity relied on were mental incapacity of the
testatrix and fraud and undue influence practiced on
her by Ralph L. Funk. The court sustained the will
except as to certain provisions in favor of Funk. These
were set aside as having been induced by his undue in-
fluence and fraud, and he appeals.

Funk was the physician of the testatrix for several
years before her death, and was also her attorney in
fact for the transaction of her business. He selected
the attorney who drew the will and paid for drawing
the will, but it does not appear whether out of his own

Black v. Funk.

funds or the funds of his principal.   He also selected the witnesses to the will and notified them and the attorney of the time chosen by the testatrix to make her will. The preparation of the will consumed some two or two and one-half hours.   During that time no one was in the room which she occupied except the attorney and the testatrix.   While Dr. Funk was at the house he did not come into the room until the will was ready for execution.   There was evidence that, notwithstanding his profession was that of conserving human health, for more than two years before her death Dr. Funk encouraged the testatrix in the immoderate use of in- toxicating liquors and a patent medicine composed largely of alcohol, opium, and chloroform; that he him- self supplied her with liquors and with this so-called medicine, in large quantities; that her health was thus undermined until she was reduced to a mental and moral state rendering her so susceptible to his influence that she was quite dependent upon him, and that he did exercise such an influence over her that she did what- ever he wanted her to do.   Other pertinent evidence was introduced, so that the court was within its province in concluding that the provisions of the will in favor of Dr. Funk were the product of his domination over the mind of the testatrix, exercised with intent to defraud.

To forestall the inference of undue influence, Dr. Funk produced the testimony of the attorney as to what occurred in connection with the preparation of the will.   After this testimony was given the court struck it out, believing, no doubt, that the rule of privi- lege forbade its consideration.

The testimony was very material if the witness were competent.

The will disposed of an estate valued at $43,000.   It contained ten specific bequests, amounting to $33,000. Several of these bequests involved the investment and management of funds, some were for life with re- mainders over, and some were on condition.   Whenever

funds were to be invested and the income applied to specific uses, such as the maintenance of a church, the keeping up of a cemetery, and the care of the family cemetery lot and vault, the executor of the will was given authority to carry out the wishes of the testatrix. The same was true with reference to funds to be invested in real estate and in real-estate mortgages for the benefit of persons remembered in the will. The income from a fund of $3000 was given to a man and his wife for life. After their death the fund falls to the residuary legatee. A gift of $3000 was made on condition that the donee attain the age of twenty-five years. The donee died before reaching the prescribed age and the gift falls to the residuary legatee. Dr. Funk was made residuary legatee, and was made executor of the will with power to convert real estate into money. Altogether the will was a complex and comprehensive document, and the attorney's testimony was that each provision was drawn according to directions given by the testatrix without suggestion or advice from him of any kind. The great weight which the testimony of an attorney who prepared a will may have in determining the question of the free agency of the testator is illustrated in the case of *Hopper v. Sellers,* 91 Kan. 876, 139 Pac. 365.

The court is of the opinion that the testimony should not have been stricken out.

When pressed to answer for whom he was attorney in the preparation of the will the witness gave it as his opinion that he was attorney for the testatrix. Perhaps the conclusion was one for the court to draw, and doubtless the court's opinion coincided with that of the witness, but the witness's description of the office which he performed indicated that he was a mere scrivener, and the fact that he was an attorney at law did not affect his capacity. Beyond this, the court has held that an attorney who drew a will was competent to testify who gave him the data for the will and whose

instructions he followed in preparing it, for the purpose of proving the absence of dictation by others (*Kerr v. Kerr*, 85 Kan. 460, 461, 116 Pac. 880) ; and the great weight of authority is that statutes like that of this state, rendering an attorney incompetent to testify concerning communications made to him by his client in that relation (Civ. Code, § 321), are declaratory of the common law and do not render communications between a testator and his attorney in reference to the preparation of a will privileged after the death of the testator (*In re Shapter's Estate,* 35 Colo. 578, 85 Pac. 688; *Kern v. Kern,* 154 Ind. 29, 55 N. E. 1004; *Coates v. Semper,* 82 Minn. 460, 85 N. W. 217; *In re Young's Estate,* 33 Utah, 382, 94 Pac. 731; *In re Downing's Will,* 118 Wis. 581, 95 N. W. 876; Note, 14 Ann. Cas. 601; 4 Wigmore on Evidence, § 2314).

Communications received from the testator not being privileged, it is manifest that the attorney may relate the facts and circumstances surrounding the preparation and execution of the will to show that the testator was not under any improper restraint.

It is argued that the provisions of the will in favor of Dr. Funk were commingled with others in such a way that the court could not in reason say that one class was the result of undue influence while the other class represented the free will of the testatrix. It is a fair inference that the testatrix asserted her own will with considerable vigor up to a certain point and then yielded to the pressure of Dr. Funk's influence. This being true, the unconstrained portions of the will will stand.

The court having duly determined that the testatrix possessed the requisite mental capacity to make the will it is not necessary to reinvestigate that subject.

The judgment of the district court is affirmed except that the cause is remanded for a new trial of the issue of undue influence and fraud on the part of Dr. Funk with respect to the provisions of the will beneficial to him.