No. 19,992.

ARCHIBALD BLACK et al., *Appellees*, v. RALPH L. FUNK, Individually and as Executor, etc., *Appellant,* and LIZZIE ADAMS et al., *Appellees.*

SYLLABUS BY THE COURT.

WILL—*Contest—No Evidence of Undue Influence—Will Valid.* A will, made by one having testamentary capacity, disposing of valuable property, making a number of bequests to friends and relatives and to other objects in which the testatrix is interested, naming complicated conditions and making provision for carrying the will into execution, can not be said to have been executed under undue influence, where the testatrix directed all the bequests and prescribed all the conditions without the presence of any except the scrivener who wrote the will and without suggestion or assistance from any one at the time it was written.

Appeal from Brown district court; WILLIAM I. STUART, judge. Opinion filed March 11, 1916. Reversed.

*S. F. Newlon,* of Hiawatha, and *S. M. Brewster,* of Troy, for the appellant.

*James Falloon,* of Hiawatha, *Joseph S. Rust,* of Kansas City, Mo., and *Horace M. Baldwin,* of Seneca, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: This is an action to set aside a will. Judgment was rendered declaring all bequests and devises to Ralph L. Funk, his appointment as executor, and all authority granted to him under the will, invalid, because of undue influence exercised by him over the testatrix, Mattie J. Adams. Ralph L. Funk, individually and as executor, appeals.

This is the second time this case has been before this court. (*Black v. Funk,* 93 Kan. 60, 143 Pac. 426.) A statement of the facts made in the former opinion corresponds very closely with the facts established by the evidence as shown in the abstracts now before the court. The principal differences are that Mrs. Adams selected the witnesses to the will and they were paid at her request, and the facts shown by the evidence of S. F. Newlon, the attorney who as scrivener drew the will.

The former judgment of the trial court was reversed and the cause sent back for a new trial on the question of undue influence and fraud on the part of Dr. Funk with respect to the provisions of the will beneficial to him; this because the court excluded the evidence of S. F. Newlon, the attorney who drew the will. That evidence was admitted on the trial from which this appeal is taken, and it showed that the will in all its details was drawn as directed by Mrs. Adams; that as each of the several parts of the will was reduced to writing it was submitted to Mrs. Adams for approval or change before being put in the final draft; that some of the provisions as first written were changed at her direction; that no other person was in the room with Mrs. Adams and Mr. Newlon while they were talking about the will and while it was being written; that no person made any suggestion to Mrs. Adams concerning what should go into the will; that Newlon made no suggestion concerning the will but wrote it as she directed; and that all the details of the will were directed by Mrs. Adams, but the language was framed by Mr. Newlon.

There was no direct evidence to show that Doctor Funk exercised any influence over Mrs. Adams in the making of her will or that he made any suggestions whatever to her concerning the matter; neither was there any evidence to show that Doctor Funk had ever been dishonest with Mrs. Adams in the conduct of her business affairs while she was living.

The will itself should be considered. It is in part as follows:

"*First.* I desire that all of my just debts be paid by the first moneys that come into the hands of my executor hereinafter appointed, for any part of my estate, and I desire that I may be buried in a manner suitable to my condition and surroundings in life.

"*Second.* I will, devise and bequeath to Lizzie Fields the sum of $3000 during the natural life of her the said Lizzie Fields, with the remainder over, after the death of the said Lizzie Fields, to her son, Cecil Fields.

. . . hereby giving to the said Lizzie Fields, the use and benefit of said above mentioned $3000 during her life, with the provision, and this bequest made on this condition that $1000 of said $3000 shall be invested in a home for the said Lizzie Fields, and the remainder of the said $3000 shall be invested in a first mortgage or mortgages in real estate in Brown county, Kansas, the said Lizzie Fields to have the full use, rents and profits of said home during her natural life, and the full use, interest, rents and profits of the said $2000 so as above mentioned, during her natural life, and on the death of the said Lizzie Fields, said home so bought as above mentioned, shall go to said Cecil Fields absolutely, but that the said above mentioned property going to the said Cecil Fields shall remain in the care and control of my executor until the said Cecil Fields becomes twenty-one years of age, except what may be necessary, in the judgment of said executor, for his care and maintenance.

. "*Third.* I will, devise and bequeath to the Powhattan Cemetery Association, the use, rents and profits of the sum of $3000 to go to the keeping up and maintenance of the Powhattan Cemetery, in Brown county, Kansas, said sum of three thousand dollars to be invested by my executor and put out by him in first mortgage, or mortgages, in Brown county real estate, said Cemetery Association to get the benefit of the rents and profits of said sum of $3000 to assist in keeping up and maintaining said cemetery, said rents and profits to be used in said maintenance according to and under the advice of my said executor.

"*Fourth.* I will, devise and bequeath and set apart the sum of $5000 to be invested by my executor in first mortgage, or mortgages, on Brown county real estate, the rents and profits and interest of said above mentioned $5000 to go·to the maintenance and care of a cemetery lot, on which I and my deceased husband have a vault, said rents and profits to be used in the purchase and planting of flowers in and upon said lot, and in beautifying the same, and taking care of and preserving said lot and the vault thereon. Said money to· be invested as above mentioned, in said Brown county real estate by my said executor.

"*Fifth.* I will, devise and bequeath to my niece, Mrs. R. D. Jones, the sum of $5000 in cash.

"*Sixth.* I will, devise and bequeath to my niece, Mrs. F. M. Cooper, the sum of $3000 in cash.

"*Seventh.* I will, devise and bequeath to Millard Short, the sum of $3000, said sum of $3000 to be invested by said executor for the use and benefit of the said Millard Short, until he becomes twenty-five years of age, the said rents, and profits of said above mentioned $3000 to be used by my said executor for the care and maintenance of the said Millard Short, if in the judgment of my said executor, he needs the rents and profits and interest thereon for his care and maintenance before he arrives at the age of twenty-five, but if in the judgment of my said executor he does not need said interest, rents and profits for his care and maintenance until he becomes twenty-five years of age, said rents and profits are also to be invested by my said executor until the said Millard

Short becomes twenty-five years of age, all of which said $3000 and rents and profits to be invested in first mortgages on Brown county real estate, provided, if he die under twenty-five years of age said $3000 shall go as hereinafter provided.

"*Eighth.* I will, devise and bequeath to the Methodist Episcopal Church of Powhattan, Brown county, Kansas, the sum of $3000 to be invested in a first mortgage or mortgages on real estate in Brown county, Kansas, the interest, rents and profits to be used under the advice of my said executor in the maintenance and care of the church building and grounds of said Methodist church, said sum of $3000 to be a perpetual fund to said church, the said rents and profits, only, to be used as above mentioned.

"*Ninth.* I will, devise and bequeath to my nephew, Charles Black, the sum of $3000 in cash.

"*Tenth.* I will, devise and bequeath to Mrs. Augusta Lytle, wife of William Lytle, the sum of $2000 in cash.

"*Eleventh.* I will, devise and bequeath to James M. Adams and Susan C. Adams, his wife, the sum of $3000 during the natural life of the said James M. Adams and Susan C. Adams, or as long as they, or either of them, may live, that is to say, that during the lifetime of both of them, they have the use, interest, rents and profits, of said above $3000 and on the death of one of them, the survivor has the use, rents and profits and interest, of said above described and mentioned $3000 as long as the survivor lives, but on the death of said survivor, the remainder shall go as hereinafter specified.

"*Twelfth.* The remainder and residue of all my property of all kinds, nature and description, after the payment of the above legacies, as above mentioned, I will, devise and bequeath to Dr. Ralph L. Funk, this bequest to the said Ralph L. Funk is made to him by reason of work he has done, care and maintenance he has taken of me and my property, and for the further consideration that the said Ralph L. Funk is to be and will be nominated and appointed as the executor of this my last will and testament, and this bequest includes to the said Ralph L. Funk, the remainder in the $3000 willed to the said James M. Adams and Susan C. Adams, after the life estates of the said James M. Adams and Susan C. Adams have been terminated by the death of the said James M. Adams and his wife, Susan C. Adams, hereby willing, bequeathing and devising to him, the remainder in said sum of $3000 and also, including the said sum of $3000 willed and devised and bequeathed to the said Millard Short, provided the said Millard Short should die before he arrives at the age of twenty-five years.

"*Thirteenth.* I hereby instruct and give my executor hereinafter appointed, full power to reduce all of my property to money, and to sell any and all real estate of all kinds that I own, and reduce the same to money, hereby giving and devising to my said executor full power to make any and all transfers by deed, or otherwise, and hereby giving him full power to sign any and all deeds and papers necessary to reduce my said estate into money, and to sell and convey any and all realty that I

may own at the time of my death, and transfer all title therein, and place the purchaser or purchasers in possession thereof.

"*Fourteenth.* I hereby nominate and appoint Ralph L. Funk as the executor of this my last will and testament."

One with testamentary capacity, yet under the undue influence of another, could not do what the evidence of Newlon shows was done by Mrs. Adams when the will was being drawn, without the presence and suggestion of the person exercising the influence. The evidence of S. F. Newlon and the will itself establish the fact that undue influence was not exercised by Doctor Funk at the time the will was drawn, notwithstanding the circumstantial evidence, which, without the evidence of Newlon, tended to show that undue influence might have been exercised.

In many respects this case in its facts is very similar to *Hopper v. Sellers,* 91 Kan. 876, 139 Pac. 365. In that case the question of undue influence turned largely on the evidence of the attorney who acted as scrivener in drawing the will, concerning what took place at the time the will was being written. In the present case the evidence of S. F. Newlon, not in any way attacked or disputed by evidence, finding, brief or argument, together with the will itself, is controlling as against the circumstantial evidence, which is just as consistent with good faith on the part of Doctor Funk as it is with the exercise of undue influence on his part.

In *Ginter v. Ginter,* 79 Kan. 721, 101 Pac. 634, this court said:

"To vitiate a will there must be more than influence. It must be undue influence. To be classed as 'undue,' influence must place the testator in the attitude of saying: 'It is not my will but I must do it.' He must act under such coercion, compulsion or constraint that his own free agency is destroyed. The will or the provision assailed does not truly proceed from him. He becomes the tutored instrument of a dominating mind, which dictates to him what he shall do, compels him to adopt its will instead of exercising his own, and by overcoming his power of resistance impels him to do what he would not have done had he been free from its control." (p. 725.)

Under this rule, undue influence is not shown in the present case.

The trial court, with the evidence of S. F. Newlon, reached the same conclusion on the last trial that it did without that

33—97 KAN.

evidence on the former trial. In this we think the court made a mistake. The judgment is reversed, and the cause is remanded with directions to enter judgment sustaining the will in all its parts.