# 𝕸𝖞𝖙𝖍𝖊𝖛𝖎𝖑𝖑𝖊.

## HUGO AND OTHERS V. CLARK.

June 12, 1919.

Absent, Whittle, P.

1. PRIVILEGED COMMUNICATIONS — *Communications to Attorney — Execution of Will Revoking Prior Will—Case at Bar.*—In a testamentary contest between the heirs at law on the one side, claiming that the decedent died intestate, and a devisee claiming that a paper offered for probate is the true last will and testament of the decedent, the heirs at law offered to prove by the attorneys of the decedent that they drew for the decedent a later will than the paper offered for probate, which, in express terms, revoked that paper, one of the attorneys who drew the later will being one of the attesting witnesses thereto. The court only permitted the attorneys to testify that a paper was duly executed as the last will and testament of the decedent, and refused to permit them to testify as to the contents of the paper, upon the ground that these constituted privileged communications by the decedent to his attorneys, and hence were inadmissible.

   *Held:* That the evidence of both the attorneys as to the contents of the second will should have been permitted for the consideration of the jury.

2. PRIVILEGED COMMUNICATIONS—*Attorney and Client—Limitation of Rule—Death of Client—Litigation between Parties who Claim under the Client.*—It is generally considered that the rule of privilege does not apply in litigation, after the client's death, between parties, all of whom claim under the client; and so, where the question before the court is as to the validity or genuineness of an alleged will, the attorney of the testator may, according to the weight of authority, testify to all matters relevant to the issue, although his testimony involves a disclosure of confidential communications between himself and his client, at least when such attorney is one of the subscribing witnesses to the will, as in such case the testator must be considered as having waived the privilege by requesting the attorney to sign as a witness. A decedent's attorney has also been held competent to prove the existence and con-

tents of a lost will; and, in an action involving the construction of a will, the attorney who drew the will may testify as to relevant communications of the testator.

3. WILLS—*Lost will which Revokes a Former Will.*—Where a will which revokes a former will has been lost or destroyed and its contents cannot be sufficiently proved to admit it to probate, it may nevertheless be availed of as a revocation in opposition to the probate of the will which it revokes.

Appeal from a decree of the Circuit Court of city of Norfolk in a contested will case. Decree for proponent of will. Contestants appeal.

*Reversed.*

The opinion states the case.

*J. G. Martin, Harry E. McCoy* and *W. S. Morris, Jr.,* for the appellants.

*Thos. H. Wilcox* and *A. Johnston Ackiss,* for the appellee.

PRENTIS, J., delivered the opinion of the court.

[1] The appellants are the heirs at law of Cyrus Warden, deceased, and complain of a judgment based upon the verdict of a jury, holding that the paper dated December 27, 1916, devising and bequeathing all of his property to Eva Catherine Clark, the appellee, is his true last will and testament.

The appellants deny that this paper thus admitted to probate is the true last will and testament, because they allege that on a date subsequent to its execution—that is, on the 15th day of March, 1917, about thirty days prior to his death—Warden made and executed another will which in express terms revoked the former will and devised all of his property to a charitable institution in Norfolk, spoken of as the "Boys' Home." They offered to prove these facts by Ivor A. Page and R. J. B. Page, who were the attorneys who

drew the later will, the said R. J. B. Page being one of the attesting witnesses thereto; but the court only permitted these witnesses to testify that a paper was duly executed as the last will and testament of Warden, and refused to permit them to testify as to the contents of the paper, upon the ground that these constituted privileged communications by Warden to his attorneys, and hence were inadmissible. Other testimony was admitted from which the jury might have been justified in concluding that the later will of March, 15, 1917, was destroyed by Warden with intent to revoke it a short time before his death. There was no evidence offered to prove a re-execution or republication of the previous will, as required by section 2519 of the Code.

The question, then, which is presented, is whether, under the facts stated, the appellants were entitled to the testimony of these attorneys as to the contents of the second will, although it had been destroyed, as tending to prove that the first will, here in controversy, had been thereby revoked in express language and by necessary implication.

While this precise question has not arisen frequently, there have been many cases which we think establish beyond peradventure the doctrines which control.

[2] In 40 Cyc. 2380, this is stated: "It is generally considered that the rule of privilege does not apply in litigation, after the client's death, between parties, all of whom claim under the client; and so, where the question before the court is as to the validity or genuineness of an alleged will, the attorney of the testator may, according to the weight of authority, testify as to all matters relevant to the issue, although his testimony involves a disclosure of confidential communications between himself and his client, at least when such attorney is one of the subscribing witnesses to the will, as in such case the testator must be considered as having waived the privilege by requesting the attorney to sign as a witness. A decedent's attorney has also been

held competent to prove the existence and contents of a lost will; and, in an action involving the construction of a will, the attorney who drew the will may testify as to relevant communications of the testator." Citing many authorities.

In a note, in which the authorities are collected, to *In re Young,* 17 L. R. A. (N. S.) 108 (14 Ann. Cas. 601, 126 Am. St. Rep. 843, 33 Utah 382, 94 Pac. 731), this statement is made: "It may be laid down as a general rule of law, gathered from all the authorities, that unless provided otherwise by statute, communications by a client to the attorney who drafted his will, in respect to that document, and all transactions occurring between them leading up to its execution, are not, after the client's death, within the protection of the rule as to privileged communications, in a suit between the testator's devisees and heirs at law, or other parties who all claim under him. The reason for such an exception to the general rule excluding confidential professional communications is that the rule is designed for the protection of the client, and it cannot be said to be for the interest of a testator, in a controversy between parties all of whom claim under him, to have those declarations and transactions excluded which are necessary to the proper fulfillment of his will."

The reason for excluding such communications, stated succinctly, is that it is essential to the administration of justice that clients should feel free to consult their legal advisers without any fear that their disclosures will be thereafter revealed to their detriment. As a matter of public policy, this rule should be rigidly enforced in order that men may secure legal advice, after frank disclosures to their counsel without which they would be unable to defend themselves from threatened wrong. After the death of the client, however, it has been held that the privilege may be waived when the character and reputation of the deceased are not involved, by his executor or administrator, or in

17

will contests by his heirs or legatees. The deceased has no longer any interest in the matter.

In the leading English case of *Russell* v. *Jackson*, 9 Hare 387, 8 Eng. L. & Eq. 89, 68 Eng. R. 558, the question was whether an attorney could testify that the residuum of the estate was devised upon a secret trust not expressed in the will. This witness stated that the general purport and effect of his instructions for preparing the will were, that it was the testator's intention to leave the property for the purpose of establishing a school for the education of children in the doctrine of socialism, and so far as the witness recollected according to the principles of Robert Owen; and that these instructions contained the scheme on which the testator intended that the proposed school should be conducted. It was held that the witness could be compelled to disclose these facts upon the ground that the reason of the rule which protects from disclosure communications made in professional confidence, applies in cases of conflict between the client and those claiming under him, with third persons, but that these reasons do not apply in cases of testamentary dispositions by the client as between different parties all of whom claim under him. Among other things, the vice-chancellor (Turner) said: "When we pass from the case of conflict between the rights and interests of the client and parties claiming under him, and those of third persons, to the case of testamentary disposition by the client, do the same reasons apply? The disclosure in such cases can affect no right or interest of the client. The apprehension of it can present no impediment to the full statement of his case to his solicitor unless, indeed, he is contemplating an illegal disposition, a case to which I shall presently refer; and the disclosure when made can expose the court to no greater difficulty than presents itself in all cases where the courts have to ascertain the views and intentions of parties, or the objects and purposes for which dispositions have been

made. In the cases of testamentary dispositions, the very foundation on which the rule proceeds seems to be wanting; and in the absence, therefore, of any illegal purpose entertained by the testator, there does not appear to be any ground for applying it."

The Supreme Court of the United States, in the case of *Glover* v. *Patten,* 165 U. S. 406, 17 Sup. Ct. 416, 41 L. Ed. 767, thus expresses the rule: "Whatever view be taken of the facts, we are of opinion that, in a suit between the devisees under a will, statements made by the deceased to counsel respecting the execution of the will, or other similar document, are not privileged. While such communications might be privileged, if offered by third persons to establish claims against an estate, they are not within the reason of the rule requiring their exclusion, when the contest is between the heirs or next of kin." In that case the attorney was permitted to testify as to a written agreement and communications with reference thereto as aiding in the construction of a will previously executed.

In *Blackburn* v. *Crawford,* 70 U. S. (3 Wall.) 193, 18 L. Ed. 193, on a question of marriage and legitimacy, an attorney who drew the will for the alleged husband, in which the children of the connection set up as wedlock were described as the natural children of the testator, it was held that the attorney might testify as to what was said by the testator about the character of the children and his relations to their mother, in interviews with the testator preceding and in connection with the preparation of the will.

In *Holyoke* v. *Holyoke,* 110 Me. 469, 87 Atl. 40, this rule was applied in a case involving the probate of a foreign will, and an attorney was permitted to testify as to the true domicile of the testator which he learned in his professional capacity from the admission of the testator, the court stating that the controversy was not one which affects the estate as such, but rather affects the manner of its administration and distribution.

In *Phillips* v. *Chase*, 201 Mass. 444, 87 N. E. 755, 131 Am. St. Rep. 406, an attorney was permitted to testify as to an affidavit which the testatrix subscribed and verified, to the effect that a certain adoption of a child was not made by her own free will, but was forced upon her by her husband, and that she also told him to communicate such statement to her brothers. This evidence was admitted in a proceeding for the revocation of the decree of the probate court for the adoption of the child referred to, upon the ground that the decree of adoption was obtained by fraud upon the probate court, and through coercion and undue influence exercised upon the wife, the court saying, among other things: "But where the controversy is not between an estate and persons claiming against it, but is to determine who shall take by succession the property of a deceased person, and both parties claim under him, the reason for the privilege does not exist, and neither can set up a claim of privilege against the other." *Doherty* v. *O'Callaghan*, 157 Mass. 90, 31 N. E. 726, 34 Am. St. Rep. 258, 17 L. R. A. 188; *Layman's Will*, 40 Minn. 371, 42 N. W. 286; *Coates* v. *Semper*, 82 Minn. 465, 85 N. W. 217; *Kern* v. *Kern*, 154 Ind. 29, 55 N. E. 1004; *O'Brien* v. *Spalding*, 102 Ga. 490, 31 S. E. 100, 66 Am. St. Rep. 202; *Scott* v. *Harris*, 113 Ill. 447; *Thompson* v. *Ish*, 99 Mo. 160, 12 S. W. 510, 17 Am. St. Rep. 552; *Black* v. *Funk*, 93 Kan. 60, 143 Pac. 426; 4 Wigmore on Ev., secs. 2314-2315.

In *Middletown Trust Co.* v. *Crowell*, 89 Conn. 290, 93 Atl. 785, there was a suit by an administrator for the benefit of the intestate's grandchildren to set aside a transfer of property made by the intestate to a son. It was held that as both the son and the grandchildren represented by the administrator claimed under the intestate, the one by succession and the other by the transfer, neither could claim the privilege with respect to the intestate's communications to her attorney when the instrument by which the transfer

was made was drawn, as the rule of privilege is for the benefit of the client, and exists for him and his estate, and, when both parties claim under a deceased client, the reason for the privilege does not exist. *Mahoney* v. *Healy,* 10 Del. Ch. 311, 91 Atl. 208, approves and enforces the same rule.

A recent California case, *Smith* v. *Smith,* 173 Cal. 732, 161 Pac. 495, applies the same doctrine as to knowledge acquired by an attorney who was the draftsman of the deeds which were involved in that case.

*In re Wear's Will,* 131 App. Div. 875, 116 N. Y. Supp. 304, is strikingly like this case. There the testator had executed a will, dated June 18, 1900, which was drawn by his attorney, who became one of the subscribing witnesses. In September, 1904, the decedent requested this attorney to draw another will which disposed of all of the estate and contained a revocation clause. The new will was duly executed and the attorney who witnessed the previous will also witnessed the later one. The will of the earlier date, June 18, 1900, was offered for probate and the will made in 1904 was not found after the testator's death, so that the presumption arose that this second will was destroyed with intent to revoke it. We quote from the opinion: "The objection urged on this appeal from the decree of the surrogate refusing probate to the first will is that the proof offered and received of the execution of the second will is inadequate. The appellant contends that the proof must be of the character required by sections 2621 and 1865 of the Code of Civil Procedure, entitling a lost will to probate. The requirement of this section is that the provisions of such last will must be established 'by at least two credible witnesses, a correct copy or draft being equivalent to one witness.' We are of the opinion that this contention cannot be sustained. It is one thing to admit to probate a will disposing of a man's estate where the will cannot be found, and quite another thing to merely establish that a second

will, revoking a former will, has been duly made and executed and left in the possession of the decedent. In the one case we are assuming to dispose of property in a manner different from that prescribed by law in the absence of a will, while in the latter case we are merely permitting the property to descend in the manner which the law designates. In the case now under consideration the execution and delivery of the will to the decedent was proved by Mr. Eckstein who drew both wills, and who was a subscribing witness in both of them. He would have been entirely competent to have proved the execution of the will, if it had been found, the remaining subscribing witness being dead; and he was equally competent to prove the execution and delivery of the will to the decedent, not for the purpose of establishing a lost will, but to show that the will offered for probate was not the last will and testament of the decedent, and that such an instrument was executed and left in such a custody that the presumption is that it was destroyed with the intention of revocation, with the result that the decedent died intestate." And the decree refusing to probate the said first will was affirmed.

[3] In *Wallis* v. *Wallis*, 114 Mass. 510, it is also held that where a will which revokes a former will has been lost or destroyed and its contents cannot be sufficiently proved to admit it to probate, it may nevertheless be availed of as a revocation in opposition to the probate of the will which it revokes. *Nelson* v. *McGiffert*, 3 Barb. Ch. (N. Y.) 158, 49 Am. Dec. 170; *In re Cunningham*, 38 Minn. 169, 36 N. W. 269, 8 Am. St. Rep. 650.

*In re Cunnion's Will*, 135 App. Div. 864, 120 N. Y. Supp. 266, is relied upon for a contrary view. Upon appeal, this case is reported as *In re Cunnion*, 201 N. Y. 123, 94 N. E. 648, Ann. Cas. 1912A, 835. The appellate court there affirmed the judgment of the lower court, basing its judgment, however, upon statutes of New York, but expressly

recognizing the general rule which would have controlled but for these statutes.

We cannot distinguish this case from the general line of cases to which we have referred, and it appearing that this is a testamentary contest between the heirs at law on the one side, claiming that the decedent died intestate, and the devisee, claiming that the paper offered is the true last will and testament of the decedent, we conclude that the privilege does not exist. The question is whether the paper offered is the true last will and testament. If it has been revoked, it is not, and if the decedent thereafter executed a second will expressly revoking the previous will, there is no reason to infer that he then intended the fact of such revocation as a confidential communication to be withheld after his death. Indeed, it is manifest that by requesting one of the attorneys to witness it he at that ime intended him to testify with reference thereto after his death. The learned judge of the trial court expressed grave doubt as to the soundness of his ruling. For the reasons here indicated, we think that the evidence of both of the attorneys as to the contents of the second will should have been admitted for the consideration of the jury.

The verdict and the judgment admitting the paper dated December 27, 1916, to probate as the true last will and testament of the decedent will, therefore, be set aside, and the case remanded for a new trial.

SIMS, J., concurs in the result.

*Reversed.*